. **KRICKLER, Appellant,**

v.

**CITY OF BROOKLYN et al., Appellees.**

[Cite as *Krickler v. Brooklyn,* 149 Ohio App.3d 97, 2002-Ohio-4278.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Decided Aug. 22, 2002.

</div>

James L. Deese, for appellant.

Tomino & Latchney and Nick C. Tomino, for appellees.

---

ANNE L. KILBANE, Judge.

{¶ 1} This is an appeal from an order of Judge John D. Sutula that granted summary judgment in favor of appellees city of Brooklyn, Ohio ("Brooklyn"), and its mayor, Kenneth E. Patton, on appellant Pamela Krickler's claims for wrongful termination. Krickler claims that she presented sufficient evidence to sustain causes of action for promissory estoppel, termination in violation of public policy, and intentional infliction of emotional distress, and also claims that he erroneously dismissed her appeal of the Brooklyn Civil Service Commission's ruling that

she was not a "classified" employee. We affirm in part, reverse in part, and remand.

{¶ 2} Krickler, at age seventeen, began working for Brooklyn as a part-time employee in 1974, became a full-time employee in 1976, and in 1983 was given the position of personnel/records clerk by then mayor John Coyne. Although she did not take an examination for the position, Coyne assured her that the job was in the "classified" civil service and would be protected in the event of a change in administration. This view was echoed by her predecessor in the position, as well as Brooklyn's then law director.

{¶ 3} Mayor Patton was elected in November 1999, and when he took office on January 1, 2000, he notified Krickler, along with several other city employees, that they were dismissed as part of the change in mayoral administration. She grieved the firing to the Brooklyn Civil Service Commission, which ruled that she was not a "classified" employee under R.C. 124.11 and not subject to the protections of R.C. 124.34. The commission ruled that she was an at-will employee and could be dismissed without cause.

{¶ 4} Krickler filed a complaint in the common pleas court alleging causes of action for age discrimination, promissory estoppel, termination in violation of public policy, and intentional infliction of emotional distress. A fifth count stated, "Plaintiff hereby appeals the ruling of the City of Brooklyn Civil Service Commissions [sic] dated March 2, 2000, finding Plaintiff Pamela Krickler was 'not a classified employee' at the time of her discharge." Krickler attached a copy of the commission's ruling to her complaint but did not allege that she had notified the commission of her appeal, and the commission did not notify the common pleas court of the appeal.

{¶ 5} The judge dismissed the fifth count sua sponte, stating that he lacked subject matter jurisdiction because Krickler failed to perfect her appeal under R.C. 2505.04. She appealed the order (Cuyahoga App. No. 79423), and we dismissed it for lack of a final appealable order on April 4, 2001. The judge subsequently granted summary judgment to Patton and Brooklyn on the remaining claims, and Krickler now asserts two assignments of error:

{¶ 6} "I. The trial court committed prejudicial error when it granted defendants' motion for summary judgment."

{¶ 7} We review the grant of summary judgment de novo, using the same standard as the trial judge.[1] Krickler claims that she presented sufficient evidence to sustain causes of action for promissory estoppel, wrongful discharge,

---

1. Civ.R. 56(C); *Druso v. Bank One of Columbus* (1997), 124 Ohio App.3d 125, 130–131, 705 N.E.2d 717, 720.

and intentional infliction of emotional distress,[2] and showed that a reasonable jury could find in her favor. We will address each cause of action separately.

## Promissory Estoppel

{¶ 8} Krickler argues that Mayor Coyne induced her to take the job of personnel/records clerk by assuring her that it was a classified position, that this representation was corroborated by the then law director, and that she eschewed other opportunities because of repeated assurances through the years that her position was classified. In order to maintain a claim for promissory estoppel against a municipality, however, she must show that Mayor Coyne's representations were within his power. If he had no authority to determine whether a position is in the classified civil service or to create such a position, then she cannot establish the element of justifiable reliance.[3]

{¶ 9} She is correct that her status as a classified or unclassified employee is governed by R.C. 124.11,[4] and not by the "appointing authority," in this case the mayor.[5] This argument, however, is more relevant to her appeal of the civil service commission decision, discussed infra, and in fact hinders her claim that Mayor Coyne had authority to create or decide that a particular position would be classified. The mayor has no authority to render an unclassified position classified, or vice versa, in violation of R.C. 124.11.[6]

{¶ 10} R.C. 124.11 distinguishes between employees in the classified and unclassified civil service, and R.C. 124.40 gives municipal civil service commissions the power and duty to "prescribe, amend, and enforce rules not inconsistent with this chapter for the classification of positions in the civil service of such city * * *." Krickler contends that the municipal charter limits the commission's power over the "classification of positions" to categorizing positions already within the classified civil service, and that the mayor had initial authority to decide whether her position was classified or unclassified. We disagree, because the commission has statutory authority over "the classification of positions *in the civil service* * * *" (emphasis added), and the term "civil service" includes both classified and unclassified positions.[7] Therefore, the commission's classification

---

2. She has not pursued her age discrimination claim on appeal.

3. *Nealon v. Cleveland* (2000), 140 Ohio App.3d 101, 109, 746 N.E.2d 694, 700.

4. *Yarosh v. Becane* (1980), 63 Ohio St.2d 5, 9–10, 17 O.O.3d 3, 406 N.E.2d 1355, 1359.

5. Id.; R.C. 124.01(D).

6. *Yarosh*, supra.

7. R.C. 124.01(A) and 124.11.

authority must extend to determining, in the first instance, whether a particular position is classified or unclassified and, indeed, cases have so held.[8]

{¶ 11}   The municipality may classify positions by charter or by ordinance,[9] but nothing in Brooklyn's charter gives the mayor the power to create classified positions unilaterally.   Krickler's argument concerning the charter's limits on the commission's authority is misplaced; the relevant question is whether the charter grants the mayor authority to create classified positions, and it does not.

{¶ 12}   We do not dispute that the commission's authority to make an initial determination must be exercised in accordance with R.C. Chapter 124 or other relevant law, or that Krickler has a right to appeal the commission's decision finding she was not a classified employee.   We find only that, as between it and the mayor, the commission had authority to interpret the law and to determine whether her position was classified, and the mayor did not.   Therefore, her promissory estoppel claim fails.

## Discharge in Violation of Public Policy

{¶ 13}   Krickler claims a common-law action for discharge in violation of public policy, relying on *Greeley v. Miami Valley Maintenance Contrs., Inc.*[10] and *Kulch v. Structural Fibers, Inc.*[11] The elements of this claim are (1) the existence of a clear public policy manifested in constitutional, statutory, regulatory, or common law;   (2) the circumstances of the discharge undermine or jeopardize the public policy;   (3) the discharge was for reasons related to the policy;   and (4) there was no overriding legitimate basis for the discharge.[12]

{¶ 14}   She first claims that her firing violated a public policy concerning her right to retire with immediate pension benefits after thirty years of service.   She had been a full-time employee of Brooklyn for nearly twenty-four years, nearing the thirty-year threshold that would allow her to take early retirement and enjoy pension benefits immediately.   While Brooklyn claims that there is no public policy concerning the right to retire after thirty years of civil service, we disagree.   The benefit is part of the law, and we do not doubt that a discharge for the purpose of denying Krickler her thirty years of service would be actionable.

---

8.   *Yarosh*, supra;   *State ex rel. Fenwick v. Finkbeiner* (1995), 72 Ohio St.3d 457, 459, 650 N.E.2d 896, 897–898.

9.   *Cooney v. Independence* (Nov. 23, 1994), Cuyahoga App. No. 66509, 1994 WL 663453.

10.   (1990), 49 Ohio St.3d 228, 551 N.E.2d 981.

11.   (1997), 78 Ohio St.3d 134, 677 N.E.2d 308.

12.   Id. at 151, 677 N.E.2d at 321.

The difficulty with her claim, however, is the third element; other than her length of service, nothing in the record allows the inference that she was fired in order to deny early retirement benefits.

{¶ 15} Krickler argues that her length of service is sufficient to create a jury question as to causation and to require Brooklyn to articulate a legitimate business purpose in order to rebut the inference that she was fired to prevent her reaching thirty years of service. We disagree, because her length of service, standing alone, is insufficient to sustain this element: While a bright line is unnecessary, we are not willing to find that an employee who comes within six years of early retirement age is prima facie immune from discharge.

{¶ 16} She asserts two more public policy reasons in support of her claim, both based on her relationship with Mayor Patton prior to his election. While he was employed as Brooklyn's service director in Mayor Coyne's administration, she discovered that he allowed employees under his supervision to keep alcohol in a secret refrigerator at a service garage and that employees drank alcohol while on duty. Krickler reported this to Mayor Coyne, who fired Patton, although he rehired him shortly thereafter. She also claims that she was aware that Patton drank alcohol while employed in Coyne's administration, and referred to an incident in which "he returned from the City landfill in an intoxicated condition and had been covered with dirt and fill material from apparently having fallen in the landfill." She also stated that she had once discovered that Patton had slept overnight in the Brooklyn library, "and had to confront him about this situation as well."

{¶ 17} Krickler claims that she was fired because of these incidents, and that her discharge jeopardizes public policies that prohibit drinking on the job and encourage employee whistleblowing. The whistleblowing statute, however, imposes strict requirements upon those seeking protection for making reports against their employers or coemployees. In *Kulch,* the Ohio Supreme Court recognized a common-law cause of action for wrongful discharge stemming from the violation of R.C. 4113.52 but only where the person has "fully complied" with the statute.[13] Krickler is unable to show full compliance with R.C. 4113.52; she made no report whatsoever concerning the landfill and library incidents, and failed to file a written report concerning the refrigerator situation.

{¶ 18} She also asserts a policy against workplace alcohol use, however, and we find this claim cognizable pursuant to the recent majority opinion in *Pytlinski v. Brocar Prods., Inc.,*[14] which clarified *Kulch* by finding that a

---

13. *Kulch,* supra, 78 Ohio St.3d 134, 677 N.E.2d 308, paragraph three of the syllabus.

14. (2002), 94 Ohio St.3d 77, 760 N.E.2d 385.

wrongful discharge suit is premised on the existence of retaliatory conduct in violation of public policy and not on whether an employee's complaints have met filing requirements.[15] Although *Kulch*'s "full compliance" formulation stated a narrow view of public policy for common-law wrongful discharge suits, *Pytlinski* states a broader interpretation that eases some of *Kulch*'s arguably draconian implications. While *Kulch* might have been interpreted to deny a claim based on the workplace alcohol policy by finding it an inappropriate attempt to avoid compliance with the whistleblower statute, this interpretation is no longer viable. Under *Pytlinski*, Krickler can maintain her suit based on the workplace alcohol policy, because "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted."[16]

### Intentional Infliction of Emotional Distress

{¶ 19} Krickler brought this claim against Mayor Patton only, conceding Brooklyn's immunity under R.C. Chapter 2744. She claims that he can be held liable for this intentional tort even if her whistleblower claim fails, because her failure to comply with R.C. 4113.52 does not change her claim that she was fired for complaining about his participation in workplace alcohol use. We agree that compliance with R.C. 4113.52 is unnecessary because her *Pytlinski* claim allows her to present evidence that Patton deliberately fired her in retaliation because she reported his misconduct to former Mayor Coyne.

{¶ 20} In order to maintain this claim, however, she must show not only that Mayor Patton's conduct was outrageous, but that such conduct caused her severe emotional distress.[17] Even if there is sufficient evidence from which a jury could find the conduct outrageous, Krickler failed to show that she suffered a serious emotional injury. Her affidavit stated only that "[t]he loss of my job from the City of Brooklyn, plus the manner in which notice of it was delivered to me, has caused me severe emotional distress and has affected my ability to conduct my usual daily affairs."

{¶ 21} Although expert evidence showing the existence of a serious emotional injury may not be required in every case, such evidence appears necessary in all but the most exceptional circumstances.[18] Whatever the charac-

---

15. Id. at 80, 760 N.E.2d at 388.

16. Id., paragraph one of the syllabus.

17. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374, 6 OBR 421, 453 N.E.2d 666, 671.

18. *Felden v. First Natl. Supermarkets, Inc.* (May 27, 1999), Cuyahoga App. No. 74187, 1999 WL 342237.

ter and quality of evidence necessary, it is apparent that a plaintiff's affidavit claiming severe emotional injury in conclusory terms is insufficient proof of such injury.[19] Therefore, she cannot sustain her claim of intentional infliction of emotional distress. The first assignment of error is overruled in part and sustained in part, as Krickler produced enough evidence to survive summary judgment on her claim of wrongful discharge in violation of the policy against workplace safety.

{¶ 22} The second assignment states:

{¶ 23} "II. The trial court committed prejudicial error when it dismissed plaintiff's appeal from the decision of the civil service commission."

{¶ 24} Krickler claims that she followed the correct procedures to appeal the civil service commission's March 2, 2000 ruling, that she proved that her notice of appeal was filed with the commission when she opposed summary judgment, and that it was error to find that she failed to file a notice of appeal with the commission. Appeals of municipal civil service commission decisions are governed by R.C. Chapters 2505 and 2506.[20] We first note that Krickler apparently is somewhat confused as to whether the provisions of those chapters apply, or if she was required to comply with R.C. Chapter 119. For clarity's sake, we note that the commission is not an "agency" for purposes of R.C. Chapter 119, and therefore the only applicable statutory provisions for appeal are found in R.C. Chapters 2505 and 2506.[21]

{¶ 25} Although Brooklyn contends that Krickler's notice was insufficient to perfect her appeal under R.C. 2505.04, that issue is not before us. Although she raised the issue and appended her notice to the commission in her motion opposing summary judgment, the summary judgment ruling indicates that the judge did not assess whether her notice satisfied R.C. 2505.04, but instead stood by his initial ruling without examining the notice. The judge erred in finding that he lacked jurisdiction over the appeal without examining the notice filed with the commission, because R.C. 2505.04 liberally allows an appeal to be perfected, even if there are defects that must be corrected before it can properly be heard.[22]

---

19. Id.

20. R.C. 2506.01; *Jacobs v. Marion Civ. Serv. Comm.* (1985), 27 Ohio App.3d 194, 195, 27 OBR 233, 500 N.E.2d 321, 322–323.

21. Id.; *Karrick v. Findlay School Dist. Bd. of Edn.* (1963), 174 Ohio St. 467, 23 O.O.2d 114, 190 N.E.2d 256, paragraph two of the syllabus.

22. *Moore v. Cleveland Civ. Serv. Comm.* (1983), 11 Ohio App.3d 273, 275–276, 11 OBR 453, 465 N.E.2d 482, 484–485.

The second assignment is sustained, and the issue remanded with instructions to consider whether the appeal was perfected under R.C. 2505.04.

Judgment affirmed in part,
reversed in part
and cause remanded.

DIANE KARPINSKI, J., concurs.

JAMES D. SWEENEY, P.J., concurs in judgment only.

JAMES D. SWEENEY, Presiding Judge, concurring in judgment only.

{¶ 26} I concur in judgment only and cite concurring opinions in *State v. Thomas* (May 13, 1999), Cuyahoga App. Nos. 72536 and 72537, 1999 WL 304296, and *Garnett v. Garnett* (Sept. 16, 1999), Cuyahoga App. No. 75225, at 3–4, 1999 WL 728378, and Loc.App.R. 22(C) of this court, which states: "Opinions of the Court will not identify or make reference by proper name to the trial judge, magistrate * * * unless such reference is essential to clarify or explain the role of such person in the course of said proceedings." (Eff. July 25, 2000.)