NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0860n.06
Filed: November 22, 2006

No. 05-4629

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KAREN SOSBY, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| MILLER BREWING COMPANY, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    KEITH and McKEAGUE, Circuit Judges; and CLELAND, District Judge.[*]

**CLELAND, District Judge.**  After Defendant-Appellee Miller Brewing Company ("Miller") terminated Plaintiff-Appellant Karen Sosby, she filed a complaint against Miller, alleging sex, race, and disability discrimination, retaliation, and failure to accommodate under Ohio Revised Code § 4112, race discrimination under 42 U.S.C. § 1981, wrongful discharge in violation of Ohio public policy, and an entitlement claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. The district court granted Miller's motion for summary judgment on all of Sosby's claims. For the reasons set forth below, we affirm.

I.

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

Miller employed Plaintiff-Appellant Karen Sosby as a forklift driver in its Ohio brewery. In May 1998, Sosby injured her back in a forklift accident, but did not miss any work as a result of her injury. Over a year later, on July 8, 1999, Sosby's physician, Dr. Gula, prohibited Plaintiff from performing any work until further notice. Dr. Gula allowed Sosby to return to work on November 1, 1999. On the first day Sosby returned to work, she claimed she injured her foot. Sosby spoke to Shari Moler, the plant's workers' compensation manager, and claimed she returned to work too early. After Moler explained that Sosby was released by her own physician, Sosby completed her shift, and returned to work the next day. On November 8, 1999, Sosby saw Dr. Gula, who restricted her from working again until further notice.

Sosby was able to return to work on January 3, 2000 without restrictions. Plaintiff claims she re-aggravated her foot injury in February 2000. On March 3, 2000, Plaintiff allegedly injured her foot a third time as she got down from her forklift to help a worker. Sosby characterized this third injury as "much worse" than her previous ones. Moler claims she attempted to contact Sosby for more information, but was unable to reach her until March 10, 2000. During that conversation, Moler requested that Sosby come in for an evaluation by the company doctor, but Sosby refused because she claimed that the FMLA does not require her to submit to an examination by her employer's company doctor.

Miller was suspicious of Sosby's alleged injuries. As a result, Miller hired Sur-Tech Investigations ("Sur-Tech") to conduct surveillance of Sosby's home from March 10 to 14, 2000, while Sosby was allegedly on medical leave. On March 22, 2000, Moler rejected Plaintiff's workers' compensation claim for her March 3, 2000 injury because Sur-Tech reported that Sosby was not at

home during this first surveillance period. Sosby contends that she was either at home or at the hospital the entire time. On March 29, 2000, Sosby filed an Ohio Civil Rights Commission ("OCRC") charge challenging this denial, which she withdrew in May 2000. On April 6, 2000, Sosby submitted to an independent medical examination with Dr. Randolph at Miller's request. According to Miller, the results of Dr. Randolph's examination were inconsistent with Sosby's description of her accidents.

Miller contends that because the results of the first surveillance and this medical examination bolstered its suspicions, it ordered Sur-Tech to conduct additional surveillance. Sur-Tech conducted videotape surveillance of Sosby's home on May 6, 2000, and observed Sosby working in her yard for three hours without difficulty. Sosby was still on medical leave at that time, and did not return to work until June 5, 2000 because Dr. Gula determined that she was "continuously and totally disabled (unable to perform any and all job duties)."

The parties attended an August 8, 2000 workers' compensation hearing ("Hearing") regarding Sosby's March 3, 2000 injury. At the Hearing, Sosby gave the following statements under oath: she was in bed until she went back to work on June 5, 2000, and during that time she did not do any housework save one attempt to do laundry. Miller specifically asked Sosby if she did any yard work during this time, and she answered "No. No." When the Hearing concluded, Miller's attorney informed Sosby that he had a tape of her doing yard work on May 6, 2000. Plaintiff did not explain this inconsistency. Following the Hearing, Moler discussed Miller's response with Steve Mellott, Miller's Human Resources Manager, and Tom Mobley, Miller's Employee Relations Manager. Mellott determined that Miller would pursue criminal charges against Sosby for workers'

compensation fraud. Miller would then use Sosby's conviction to terminate her employment. Mellott alleges that due to the duration and uncertainty of litigation, he directed Mobley to begin an internal investigation instead.

Sosby filed a retaliation claim on August 9, 2000, alleging that Miller conducted the surveillance in retaliation for her initial OCRC charge. On August 24, 2000, Plaintiff requested that the OCRC reconsider her withdrawn March 29, 2000 OCRC charge. The OCRC denied her request. In August 2000, Sosby also filed a FMLA complaint with the Department of Labor. Sosby was not successful in any of these charges.

On August 31, 2000, Mobley met with Sosby and her union representative. During the meeting, Sosby refused to explain the inconsistency between her sworn statement and the videotaped evidence. Sosby saw the tape when the parties met again on September 13, 2000. Sosby again declined to comment, despite Mobley's warning that Miller was considering termination if Sosby failed to explain her actions.[1] During an October 5, 2000 mediation, Sosby refused Miller's offer to resign in return for Miller's agreement to refrain from challenging her benefits. Miller terminated Sosby on October 9, 2000, citing her false statement under oath at the Hearing as its basis for her dismissal.

Sosby filed her complaint in the Court of Common Pleas, Butler County, Ohio on October 9, 2002. The complaint alleged (1) race discrimination, sex discrimination and retaliation under

---

[1] In her appellate brief, Sosby alleges for the first time that her yard work was consistent with her treatment schedule that required her to stand for increasingly longer periods of time to become accustomed to her foot braces.

Ohio Revised Code § 4112.01; (2) disability discrimination and failure to accommodate under Ohio Revised Code § 4112.02(A); (3) race discrimination under 42 U.S.C. § 1981; (4) wrongful discharge in violation of Ohio public policy; and (5) a FMLA entitlement claim. Miller removed the case to the Southern District of Ohio. In response to Miller's motion for summary judgment, Sosby withdrew a number of her claims, and only contested her § 4112.01 retaliation claim, her public policy claims and her FMLA claim. The district court granted Miller's motion for summary judgment on these remaining claims, and Sosby appeals the district court's order. Although Sosby was represented by counsel at the district court level, she is proceeding *pro se* on appeal.

## II.

We review a district court's decision to grant a motion for summary judgment *de novo*. *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 157 (6th Cir. 2004) (citing *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Yet the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**III.**

The district court granted Miller's motion for summary judgment on Sosby's retaliation claim. Under Ohio law, an employer is prohibited from retaliating against an employee who "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" related to the opposition of unlawful discriminatory practices defined in the statute. Ohio Rev. Code § 4112.02(I).

Because Sosby does not allege direct evidence of retaliation, she must make out a claim using circumstantial evidence under the burden-shifting analysis espoused in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128 (Ohio 1981) (finding Title VII case law applicable to cases involving alleged violations of Ohio Revised Code § 4112); *see also Kirkland v. St. Elizabeth Hosp. Med. Ctr.*, 34 F. App'x 174, 177 n.2 (6th Cir. 2002) (unpublished) (applying Title VII case law to claims under Ohio Revised Code § 4112). Under *McDonnell Douglas*, a plaintiff must establish a prima facie case by showing that (1) she engaged in protected activity; (2) the employer knew of her protected activity; (3) she suffered an adverse employment action;[2] and (4) there was a causal connection between the protected activity and the adverse employment action. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the adverse employment

---

[2]Sosby has supplemented her appellate brief with a recent Supreme Court case, *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006). While the *Burlington* Court did clarify what constitutes an adverse employment action, this change is irrelevant to the instant case because Miller does not deny that Sosby's termination was an adverse employment action.

action. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If the employer meets its burden, the plaintiff must then show that the employer's stated reasons are a pretext for retaliation. *Id*.

The district court first determined that Sosby failed to establish a *prima facie* case of retaliation because her only evidence of a link between her protected activity and the adverse employment action was the fact that her termination occurred soon after her second OCRC charge. Sosby does not contest the district court's finding on appeal, and has therefore waived the issue. *See Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) (declining to consider issues not raised in appellant's opening brief); *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) (finding that appellant waived an issue when he failed to raise it in his opening brief). Nevertheless, we also find that the district court did not err in finding that Sosby failed to establish a *prima facie* case of retaliation as a matter of law.

To establish a causal connection between the protected activity and adverse employment action, a plaintiff must present evidence "'sufficient to raise [an] inference that her protected activity was the likely reason for the adverse action.'" *Zanders v. Nat'l R.R. Passenger Corp*., 898 F.2d 1127, 1135 (6th Cir. 1990) (quoting *Cohen v. Fred Meyer, Inc*., 686 F.2d 793, 796 (9th Cir. 1982)). In her response to Miller's motion for summary judgment, Sosby relied on the fact that her termination occurred soon after her OCRC charge. The district court found this temporal proximity, standing alone, insufficient to establish a causal connection. Indeed, Sosby presented no precedent where a court in this circuit found temporal proximity alone sufficient to satisfy this element. Even

the cases Sosby cited below specifically stated that mere temporal proximity was insufficient. *See*

*Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000) (refusing to find that temporal

proximity was sufficient in itself to establish a causal connection, and declining to decide "how

much evidence in addition to temporal proximity would be required"); *McNett v. Harden Comm.*

*Fed. Credit Union*, 118 F. App'x 960, 965 (6th Cir. 2004) (unpublished) ("[T]he employer's

knowledge of the protected activity coupled with an adverse action occurring close in time can create

an inference of causation *where the particular circumstances strengthen the inference of causation*.")

(emphasis added) (citation omitted). Here, Sosby offers no additional circumstances to support a

finding of causation. Therefore, Sosby has failed to present a *prima facie* case of retaliation.

Sosby also fails to demonstrate that Miller's stated reason for her dismissal, Sosby's lie while

under oath at the Hearing, is a pretext for discrimination. A plaintiff can establish pretext by

showing "'(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not

*actually* motivate the discharge, or (3) that they were *insufficient* to motivate discharge.'" *Manzer*,

29 F.3d at 1084 (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)).

On appeal, Sosby claims that her false testimony at the Hearing did not actually motivate Miller to

terminate her employment. She attempts to support her claim of pretext in a number of ways: (1)

by arguing that Miller was mistaken and she was either at home or attending medical appointments

during Miller's initial surveillance; (2) by claiming that Miller knew Sosby's yard work was part of

her schedule of recovery, yet still tried to set her up for workers' compensation fraud by putting her

under surveillance and questioning her at the Hearing; (3) by attempting to justify her false

testimony;[3] and (4) by questioning the need to wait until October 2000 to terminate her if the decision was based on her August 2000 testimony.

Sosby's argument that she was following her doctor's orders during the two surveillance periods fails to establish pretext because Miller did not fire her based on her conduct during the surveillance, but rather based on the false statements she made under oath at the Hearing. Sosby's attempts to justify her false testimony are irrelevant because they do not negate the fact that Miller legitimately perceived her statements under oath to be intentionally misleading, and could have properly fired her on that basis.[4] Furthermore, Sosby's allegation that Miller conspired to set her up and accuse her of workers' compensation fraud is not supported by any evidence and does not raise a genuine issue of material fact regarding pretext. Finally, while a long period of time between the basis for termination and the termination itself may call into question an employer's actual motivations for the discharge, here there was only one month between the two events. Furthermore, Miller has demonstrated that it waited to fire Sosby until October because it was looking into the possibility of criminal prosecution, and then pursued conflict resolution and mediation before making the decision to fire Sosby. As a result, Sosby has both failed to establish a *prima facie* case

---

[3] Sosby attempts to justify the false statements she made under oath by placing the blame on Miller, arguing that (1) Moler's lies at the Hearing put her in shock; (2) the question was not asked clearly; (3) she should not be expected to remember what she did months before; and (4) Miller's allegedly false pretense for the surveillance enables her to escape responsibility for her statements. Plaintiff also claims that her attorney and her union advised her not to explain the inconsistencies.

[4] Sosby never claims that she did not make a false statement at the Hearing or that an employee's false statement under oath is an improper basis for termination.

of retaliation and failed to demonstrate Miller's justification for her termination was a pretext for retaliation.

## IV.

The district court also granted Miller's motion for summary judgment on Sosby's public policy claims. On appeal, Sosby neither contests the district court's ruling on this issue, nor does she mention public policy in her brief. Sosby has therefore abandoned this issue. *See Priddy*, 883 F.2d at 446.

Even if Sosby had raised this issue on appeal, Sosby's public policy claims were properly subject to summary judgment for the reasons stated in the district court's opinion. Sosby's first public policy claim, based on Ohio Revised Code § 4112.02(I), was properly dismissed as a matter of law because Ohio courts have held that "[a] claim for wrongful discharge in violation of public policy embodied in [a] statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails." *Desanzo v. Titanium Metals Corp.*, 351 F.Supp.2d 769, 782-83 (S.D. Ohio 2005) (citations omitted). Because the district court properly granted Miller's motion for summary judgment on Sosby's retaliation claim, her public policy claim is subject to dismissal on that basis.

Sosby also failed to raise a genuine issue of material fact on her public policy claim based on workplace safety. Although Sosby claimed that she was terminated in retaliation for her complaints regarding dangerous workplace conditions, the uncontroverted evidence demonstrates that two of her complaints were made years before her termination. Furthermore, while Sosby does

cite one complaint she made weeks before she was terminated, she has failed to contest Miller's

evidence that it both responded positively to her complaints and retained other employees who made

the same complaints as Sosby. Therefore, the district court properly granted Miller's motion for

summary judgment on Sosby's public policy claims.

## V.

In her brief, Sosby identifies a number of events to support her claim that Miller interfered

with her FMLA rights. Sosby alleges that Miller did so by (1) refusing to recognize that her March

2000 leave was appropriate medical leave under the FMLA; (2) misrepresenting to the Department

of Labor Sosby's medical condition to undermine her credibility and jeopardize her FMLA claim;

(3) claiming that Sosby lied about her injuries to go on vacation with family members because she

did not have any vacation time left,[5] which constitutes workers' compensation fraud, to undermine

her credibility and jeopardize her FMLA claim; (4) failing to cover the cost of her FMLA-qualified

podiatrist care; and (5) conducting the May 6, 2000 surveillance, without probable cause, to stalk

her and threaten her with prosecution for workers' compensation fraud in retaliation for her two-

week medical leave and her FMLA complaint. Claims brought under the FMLA are subject to a

two-year statute of limitations. 29 U.S.C. § 2617(c)(1). Sosby filed her complaint on October 9,

2002, exactly two years after her termination. Because each allegedly improper act mentioned above

occurred prior to Sosby's termination, these FMLA claims are time-barred.

---

[5] Sosby contends that she had 125 hours of vacation time left, and therefore had no motive to lie about her medical condition to get time off work for a vacation.

Under the two-year statute of limitations for FMLA claims, Sosby's termination is the only timely event that she raises in her appellate brief. Sosby contends that Miller terminated her in retaliation for Sosby's decision to exercise her rights under the FMLA. Sosby, however, first raised her FMLA retaliation claim in her response to Miller's motion for summary judgment.[6] The district court found that allowing Sosby to amend her complaint to include a claim of FMLA retaliation at that late date would significantly prejudice Miller, and declined to do so on that basis. In her appeal, Sosby does not contest the district court's decision to deny her amendment. Therefore, Sosby has waived her right to argue her FMLA retaliation claim on appeal. *See Priddy*, 883 F.2d at 446.

Even if Sosby had properly appealed the district court's decision, the district court did not abuse its discretion in denying her amendment. In deciding whether to permit a plaintiff to amend, a district court can consider "undue 'delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (quoting *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). The district court found that Sosby's attempt to add a FMLA retaliation claim at the summary judgment stage of litigation constituted undue delay and would significantly prejudice Miller. This decision is subject to an abuse of discretion standard of review. *Leary v. Daeschner*,

---

[6] The Sixth Circuit has recognized that there are "two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hodge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). Because there are two distinct theories for recovery under the FMLA, and Sosby clearly pleaded only the entitlement theory in her complaint, we conclude that Sosby failed to plead a claim of FMLA retaliation in her complaint.

349 F.3d 888, 904 (6th Cir. 2003) (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999)).  Sosby's unexplained failure to raise her FMLA retaliation claim until the summary judgment phase of the litigation constitutes undue delay. *See Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001).

While the district court did not make a detailed finding of prejudice, on appeal Miller contends that because Sosby failed to raise a FMLA retaliation claim until after discovery had concluded and Miller filed its motion for summary judgment, Miller conducted discovery and prepared its defense solely on the entitlement theory.  Accordingly, the amendment would have necessarily delayed trial.  "At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree." *Duggins*, 195 F.3d at 834 (citations omitted).  Because the defendants in *Duggins*, like Miller, had already filed a motion for summary judgment, the *Duggins* Court found that allowing the amendment would prejudice the defendants by denying them their "anticipated 'closure.'" *Id*.  Therefore, in this case the district court did not abuse its discretion in denying Sosby's attempt to add a claim of FMLA retaliation in her response to Miller's motion for summary judgment.[7]

## VI.

In her appellate brief, Sosby lists a number of incidents to support her claim that Miller discriminated against her on the basis of race and sex.  Sosby also alleges that Miller discriminated

---

[7] Accordingly, we need not review the district court's finding that Sosby's FMLA retaliation claim was nonetheless subject to summary judgment.

against her on the basis of her disability, and failed to accommodate her disability. In Sosby's response to Miller's motion for summary judgment, however, she expressly withdrew her sex and race discrimination claims. In her response, Sosby also unequivocally conceded that her disability discrimination and failure to accommodate claims were subject to summary judgment because she could not prove she was disabled. Sosby cannot now attempt to resurrect these arguments on appeal. Because Sosby abandoned these claims, the district court did not consider them in its order, and we are without jurisdiction to review them now. *See* 28 U.S.C. § 1291.

## VII.

Sosby accuses Miller of fraud throughout her appellate brief. Sosby also argues that Miller manipulated the workers' compensation process, which violated her rights under the Freedom of Information Act because she was not given information regarding her rights. We need not consider the merits of Sosby's largely unsupported allegations because Sosby failed to raise these claims below. *United States v. Crismon*, 905 F.2d 966, 969 (6th Cir. 1990) ("[O]bjections that appear for the first time on appeal are conclusively deemed to be waived, with the effect that we are deprived of jurisdiction."). Because Sosby has waived these claims, we lack jurisdiction to review them.

## VIII.

For the foregoing reasons, we affirm the judgment of the district court.