**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0558n.06
Filed: August 8, 2007

**No. 06-3687**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BRETT E. BEERY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ASSOCIATED HYGIENIC PRODUCTS, LLC, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellee. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BOGGS, Chief Judge, and BATCHELDER and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff-appellant Brett Eugene Beery sustained a back injury in 1990 while serving in the U.S. Army in Panama. In June 2002, thirty-five-year-old Beery began working as an at-will quality inspector at the Marion, Ohio warehouse of defendant-appellee Associates Hygienic Products, Inc. ("AHP"). On Beery's application to work as a quality inspector, he checked "no" in response to the question "Are you physically or otherwise unable to perform the duties of the job for which you are applying?"

Beery worked as a Quality Inspector from June to November 2002, which required him to assist the operator and assistant operator in starting and threading diaper machines, inspect the

- 1 -

quality of the diapers, identify and hold defective diapers, maintain housekeeping in the area, and assist at the packaging end of the production line.

In November 2002, AHP transferred Beery to work as an Assistant Operator, where he was required to assist the operator with changeover and other issues on the line, load rolls of material onto spindles located on the machines, observe the line to make sure the process was running smoothly, adjust the line if needed by using controls, maintain and clean the machines, clean the line, and make splices to the material running on the line. The assistant operator position also required Beery to "lift heavy material with the use of a mechanized crane or pallet jack," but not to continuously lift over fifty pounds.

In January 2004, AHP assigned Beery to work as a packaging technician, a job that, on some lines, requires the employee to pivot back and forth between the production line and a task called a "horn" substation. As Beery described it:

> The horn substation was a position that required an employee to hold an open bag, about chest high, up to a chute, while diapers dropped into the bag. Once the correct amount of diapers dropped into the bag, the employee was required to twist or turn one-hundred-eighty (180) degrees behind the chute, and place the full bag of diapers on a conveyor belt. Because the production levels and speed varied, the amount of twisting varied[;] however, generally an employee working the horn had to twist one-hundred-eighty (180) degrees about every ten (10) to twenty (20) seconds.

On Beery's first night as a packaging technician, he performed the horn duties for about one hour and the twisting motion aggravated his back condition, requiring him to go to the local hospital's emergency room and miss the next two days of work. When Beery returned, AHP honored his

request to move to a production line that did not have a horn substation and thus did not require that type and degree of repetitive side-to-side twisting motion.

After about six months, in July 2004, AHP returned Beery to the assistant-operator position, where he worked until AHP transferred him again to a packaging technician position on the training-pants line in February 2005. AHP told Beery that he would be required to rotate through the "horn" substation for at least half an hour each day. Beery informed his supervisor, David Smith, that working the horn had injured his back in the past and his back condition prevented him from working the horn again. Supervisor Smith told Beery to go home and return with medical documentation to support his assertion that his back condition prevented him from safely working the horn.

On February 10, 2005, Beery provided AHP's human resources ("HR") manager Peg Keel with a note from Dr. Khozema Rajkotwala, M.D., dated that same day, that stated, in full, "Due to mechanical back problems Patient cannot twist repeatedly from right to left 2-10-05 thru 3-11-05."

HR manager Keel took Beery off the horn, suggested that he apply for short-term disability benefits, and told him that he would need further medical documentation if he was going to be unable to work the horn for more than a month. Keel also suggested that Beery ask his doctor whether he could modify the no-twisting restriction.

On February 17 or 18, 2005, Beery submitted to AHP a short-term disability application wherein he wrote, "I have a ruptured disk. If I twist back and forth it aggravates my muscles and nerves." Beery simultaneously submitted an Attending Physician's Statement dated February 17,

2005. Under "Restrictions & Limitations," the physician stated, without qualification, "No twisting from side to side," but he also indicated that Beery could return to work the next day, February 18.

Beery simultaneously gave AHP a Health Care Provider Certification under the Family and Medical Leave Act ("FMLA"), wherein his treating physician, Dr. Rajkotwala, wrote, "PT had appt 2-10-05 c/o back pain from new job assignment - was given work limitations which were turned down by employer. *Pt unable to do repeated work moving from side to side twisting.*" (Emphasis added). Dr. Rajkotwala opined that Beery was ready to return to work the next day, February 18, but he cautioned that it would be "necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition" on one or two occasions. Dr. Rajkotwala's FMLA certification also stated that Beery's back condition was likely to cause one or two episodes of incapacitation per month, though it is unclear from the context whether this evaluation assumed that Beery would remain in his new position that involved rotating into the horn.

HR's Keel and production manager Bill Yates met with Beery. Keel, production manager Yates, and others concluded that the prohibition on side-to-side twisting meant that Beery was unable to perform not only the training-pants packer position, but *any and all* positions that were available in the plant. On February 25, 2005, HR manager Keel called Beery and told him that AHP had no work for him consistent with his treating physician's stated restrictions and, therefore, was terminating his employment. Beery concedes that he did not submit any subsequent medical documentation that lifted or sufficiently loosened the no-twisting prohibition. AHP's personnel file

asserts, "In a manufacturing environment there is always going to be 'twisting from side to side' and we had no positions to move Brett to that would be able to meet those restrictions."[1]

Beery sued AHP in Ohio state court, asserting a claim of disability discrimination under O.R.C. § 4112.01(A) and a common-law claim of unlawful discharge in violation of Ohio public policy. AHP timely removed the case to the United States District Court for the Northern District of Ohio and filed an answer. Beery moved for leave to amend the complaint; instead of alleging actual disability, he sought to add an allegation that AHP erroneously *regarded* him as disabled, which can also be a basis for recovery under the Ohio disability discrimination statute. AHP did not file any opposition to Beery's motion for leave to amend. The district court, however, failed to rule on Beery's motion for leave to amend. Instead, the district court proceeded to rule on the parties' cross-motions for summary judgment.

The district court granted summary judgment in favor of AHP on Beery's original complaint, and Beery timely appealed. For the reasons that follow, we conclude that neither party was entitled to summary judgment on the record thus far developed. Accordingly, we reverse the grant of AHP's summary judgment motion and affirm the denial of Beery's summary judgment motion. On remand, the district court must rule on Beery's motion for leave to file an amended complaint.

I.

---

[1]AHP has provided job descriptions for the positions of Quality Inspector and Quality Assurance Technician. It has not provided job descriptions for the position of Packaging Technician or other positions in the Marion warehouse.

The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1). We have appellate jurisdiction under 28 U.S.C. § 1291.

## II.

The original complaint, which is currently the only complaint in the case, alleges that Beery is actually disabled; it does not allege that AHP erroneously regarded him as disabled. However, at oral argument before this court, Beery's counsel contended that, because the statute defines disability discrimination to include so-called "regarded-as-disabled" discrimination, the original complaint implicitly encompasses a regarded-as claim. We assume, without deciding, that this is so. We also note that Beery's summary judgment briefs abandoned any claim that he was actually disabled, instead arguing at some length that AHP fired him because it erroneously regarded him as disabled. At oral argument before this court, AHP's counsel acknowledged that AHP had adequate notice of Beery's regarded-as claim and addressed that claim at length in its own summary judgment briefs. Finally, at oral argument before this court, the parties focused entirely on Beery's claim that AHP fired him because it erroneously regarded him as disabled.

Accordingly, in evaluating the propriety of the district court's summary judgment rulings, we consider whether there was a genuine issue as to whether AHP erroneously regarded Beery as disabled. That necessarily requires us to consider whether there was a genuine issue as to whether Beery was disabled and was therefore, as AHP claims it believed, unable to perform any available job at the plant.

Beery argues that the requirement of establishing a prima facie case, and the familiar *McDonnell Douglas* burden-shifting that follows, applies only in cases where the plaintiff seeks to establish discrimination through indirect, rather than direct, evidence. He is correct. "Direct evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985). "Direct evidence of discrimination, if credited by the fact finder, removes the case from *McDonnell Douglas* because the plaintiff no longer needs the inference of discrimination that arises from the prima facie case." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995) (citing *Blalock*, 775 F.2d at 707).

In general, Ohio looks to federal regulations and cases applying the ADA for guidance in its interpretation of Ohio law, *Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998), and the different analyses of direct and indirect evidence cases indisputably obtains in the ADA context, *see, e.g., Hopkins v. Electronic Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999). No Ohio case appears to directly address the issue in the specific context of disability discrimination, but the distinction does apply in racial discrimination cases, which arise under the same statute, O.R.C. § 4112.02. *See Grooms v. Supporting Council of Preventative Effort*, 809 N.E.2d 42, 48 (Ohio App. 2d Dist. 2004) ("*Absent direct evidence of discrimination*, an employee must proceed under the burden-shifting, indirect-evidence approach set forth in *McDonnell Douglas Corp.*") (emphasis added).

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Clearly, Beery's proffered evidence is as direct as possible: he was told in no uncertain terms that he was being discharged because AHP could not accommodate his condition. *See, e.g., Holiday v. City of Chattanooga*, 206 F.3d 637, 647 (6th Cir. 2000) (withdrawal of employment offer hours after employer learned that employee was HIV-positive, employer's alleged assertion at the time that its decision was based on that knowledge, and employer's repetition of that assertion during discovery constitute direct evidence of discrimination). Thus, the district court's analysis immediately starts down the wrong path.

Where the plaintiff presents direct evidence that his disability was a factor in an adverse employment decision, his burdens are to establish that he was, or was regarded as, disabled, and that he is otherwise qualified either without accommodation, with an inessential job requirement eliminated, or with a reasonable accommodation; the burden then shifts to the employer to establish the business necessity of its decision, or to show that it was justified by wholly legitimate concerns. *Todd v. City of Cincinnati*, 436 F.3d 635, 638 (6th Cir. 2006); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 273 (1989). Beery has met his burden, at least enough to withstand summary judgment against him: there is no question that he was, or was regarded as, disabled; and there is ample evidence, in the form of his work history and physician's comments, that he remained qualified for his job, with reasonable accommodation. Thus, summary judgment against him was inappropriate under a direct evidence analysis.

Rather, to obtain summary judgment on a regarded-as disabled claim, a party must show that there is no genuine issue as to whether the employee's perceived disability *in fact* prevented him from doing any available suitable jobs. Neither Beery nor AHP made this showing below.

On one hand, AHP observes accurately that some of the notes from Beery's own treating physician, Dr. Rajkotwala, stated without qualification that Beery could not twist repetitively from side to side. It is undisputed that that restriction disqualifies Beery from performing the horn function, which is required of packers on all the *training-pants* production lines.

It is also undisputed, however, that a packer on the *diaper* production lines need not perform the horn function. Moreover, from the limited record before us, it appears that the quality inspector position likewise does not require performance of the horn function.

AHP asserts that Beery is restricted from all twisting (despite the conflicting evidence from the three notes of Dr. Rajkotwala) and that it does not have any available jobs that require no twisting. But AHP does not provide adequate evidence to conclusively establish these assertions so as to remove the issue from the province of the jury. In the record thus far provided, AHP officials have not analyzed the duties of each position to explain how the duties of each job require repetitive twisting; they rely instead on general statements such as "Repeated, repetitive – in a manufacturing environment, it's all repetitive work." (Moreover, the joint appendix does not contain any deposition testimony, affidavit, or company document purporting to list the specific positions that were available, if any, in the Marion warehouse at the time of Beery's termination.)

Perhaps most significant, AHP has not conclusively rebutted Beery's evidence that shortly before his termination, he was able to perform the assistant-operator job – a job that AHP alleges involves side-to-side twisting inconsistent with Dr. Rajkotwala's restriction – with no reported difficulty or injury. It is undisputed that Beery injured himself while working on his house shortly before his transfer to the training pants line and had to take two weeks off from his work at AHP as a consequence. AHP's own appellate brief concedes that when Beery returned to work after this absence, he worked with no apparent problem as an assistant operator – a position that AHP's own production manager, William Yates, described as "the most physical job position in the production department . . . ."

AHP has not met its burden of identifying evidence that *compels* (rather than merely permits) the conclusions that (1) the assistant operator position required such side-to-side twisting as to be inconsistent with Beery's restriction, (2) the quality inspector position required such side-to-side twisting as to be inconsistent with Beery's restriction, (3) the position of packer on a diaper-production line required such side-to-side twisting as to be inconsistent with Beery's restriction, or (4) if one of those positions or other positions in the warehouse did *not* require such side-to-side twisting, no such positions were in fact available at the time of his termination.

Moreover, the first of Dr. Rajkotwala's notes, which Beery presented on February 10, 2005, did not state that Beery's back problem would indefinitely prevent him from working the horn or doing anything else that might require twisting. The first note said only, "Due to mechanical back problems Patient cannot twist repeatedly from right to left *2-10-05 thru 3-11-05*."

The second of Dr. Rajkotwala's notes, which stated "No twisting from side to side," did not contain an explicit time limitation on the restriction. But here the context is important. Beery submitted Dr. Rajkotwala's second note on February 17 or 18 in connection with his application for *short-term* disability benefits. A jury could reasonably conclude that the doctor intended to prohibit side-to-side twisting only for the brief duration of the requested benefits, not to opine about Beery's functional capacity in the future after the benefits expired. Similarly, Dr. Rajkotwala's Attending Physician Statement, which stated "Pt unable to do repeated work moving from side to side twisting," was submitted in support of Beery's application for FMLA leave. A jury could reasonably find that Dr. Rajkotwala's opinion covered only the period of the requested leave, not some time in the near future when that leave would expire.

Viewing the substance and context of Dr. Rajkotwala's three documents, a jury could reasonably find that AHP was mistaken in its belief that Beery's back condition would indefinitely prevent him from doing any available jobs at the warehouse. Accordingly, AHP is not entitled to summary judgment on Beery's federal and state statutory claims for disability discrimination.

Conversely, Dr. Rajkotwala's unequivocal written restriction on side-to-side twisting, combined with evidence that such twisting was required at least for packers on the diaper lines and perhaps for other positions, could allow a reasonable jury to find that AHP was correct in its belief that Beery was unable to perform any of the positions available at the time of his termination. Accordingly, Beery was not entitled to summary judgment on his federal and state statutory claims for disability discrimination.

Case No. 06-3687
*Beery v. Associated Hygienic Products*

III.

Finally, neither party was entitled to summary judgment on Beery's Ohio common-law claim

for wrongful discharge in violation of public policy.

In Ohio, the four elements of this tort are: (1) a clear public policy existed and was

manifested in a federal or state constitution, statute, or administrative regulation (the "clarity"

element); (2) dismissing an employee under the circumstances would violate that public policy (the

"jeopardy" element); (3) the plaintiff's dismissal was motivated by conduct (or in this case, a

condition) related to the public policy (the "causation" element); and (4) the employer lacked

overriding legitimate business justification for the dismissal (the "overriding justification" element).

*White v. Sears, Roebuck & Co.*, 837 N.E.2d 1275, 1278 (Ohio Ct. App. 10th Dist. 2005) (citing

*Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308, 321 (Ohio 1997)),[2] *app. not allowed*, 842 N.E.2d

1054 (Ohio 2006).

For the same reasons discussed above with regard to Beery's statutory claims, Beery has

shown that there is a genuine issue of material fact as to the causation and overriding justification

---

[2]The Ohio Supreme Court's *Kulch* decision was arguably abrogated on other grounds, *see Krickler v. Brooklyn*, 776 N.E.2d 119, 122-24 (Ohio Ct. App. 8th Dist. 2002), but its formulation of the elements of a common-law claim for wrongful discharge in violation of public policy remains good law. The Ohio Court of Appeals' various districts continue to cite *Kulch* on this point. *See, e.g., DeMell v. Cleveland Clinic Foundation*, No. 88505, 2007 WL 1705094, at *2 (Ohio Ct. App. 8th Dist. June 14, 2007); *Milhouse v. Care Staff, Inc.*, No. 05MA234, 2007 WL 1589465, at *4 (Ohio Ct. App. 7th Dist. May 29, 2007); *Galyean v. Greenwell*, No. 05CA11, 2007 WL 453273, at *12 (Ohio Ct. App. 4th Dist. Jan. 29, 2007).

elements of this common-law tort.[3] *See Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 375 (6th Cir. 1999) (Ohio common-law claim for wrongful discharge in violation of public policy against age discrimination failed for same reason that ADEA claim failed, i.e., the employee's failure to show a genuine issue as to whether the employer's stated reason for his discharge was pretextual; "Godfredson acknowledges in his appellate brief that the success of his public policy claim is contingent upon the success of his ADEA claim."); *Sosby v. Miller Brewing Co.*, 211 F. App'x 382, 388 (6th Cir. 2006) ("A claim for wrongful discharge in violation of a public policy embodied in [a] statute prohibiting discriminatory practices will fail if the underlying [statutory] discrimination claim fails.") (citing *DeSanzo v. Titanium Metals Corp.*, 351 F. Supp. 2d 769, 782-83 (S.D. Ohio 2005) (citing *Godfredson* and unpublished Ohio Court of Appeals decisions))); *Hausler v. General Electric Co.*, 134 F. App'x 890, 895 (6th Cir. 2005) ("Public policy claims necessarily fail where the underlying claims fail.") (citing *Godfredson*).

## IV.

We affirm the denial of Beery's motion for summary judgment on the original complaint and reverse the grant of AHP's motion for summary judgment on the original complaint. On remand, the district court is instructed to expressly rule on Beery's motion for leave to file an amended complaint. Remanded for further proceedings consistent with this opinion.

---

[3]*See White*, 837 N.E.2d at 1278 ("Of these four elements, the first two (the clarity and jeopardy elements) are questions of law to be decided by the court. The last two (the causation and overriding justification elements) are questions of fact to be decided by a jury.") (citation omitted).

Case No. 06-3687
*Beery v. Associated Hygienic Products*

**ALICE M. BATCHELDER, Circuit Judge, concurring.** While I agree with the lead opinion that we must reverse the district court's grant of summary judgment and remand the case for further proceedings, I disagree with its reasoning in reaching this result. The lead opinion believes that Beery has produced direct evidence that AHP regarded him as disabled. I, however, do not think Beery has presented direct evidence to establish his claim of unlawful employment discrimination, and instead would apply the *McDonnell Douglas* burden-shifting approach. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Direct evidence is evidence that "does not require the fact finder to draw any inferences to reach th[e] conclusion" that "unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). "Such evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). Our circuit has acknowledged that "rarely will there be direct evidence from the lips of the defendant proclaiming his or her [discriminatory] animus," *see Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998), and I would find that Beery has not presented such evidence here.

The lead opinion's summary of the facts acknowledges that AHP "concluded that the [doctor-imposed] prohibition on side-to-side twisting meant that Beery was unable to perform . . . *any and all* positions that were available in the plant." Op. at 4. AHP thus "told [Beery] that [it] had no work for him consistent with *his treating physician's stated restrictions* and, therefore, was terminating his employment." *Id.* (emphasis added). Based on these facts, the

- 14 -

lead opinion concludes that "Beery's proffered evidence is as direct as possible: he was told in no uncertain terms that he was being discharged because AHP could not accommodate his condition." *Id.* at ¶ 19. I do not agree with this conclusion. As recognized in the lead opinion's own rendition of the facts, AHP did not tell Beery that he was being discharged because AHP could not accommodate his *physical condition* but, rather, because AHP could not accommodate his *doctor-imposed work restrictions*.

The lead opinion's analysis erroneously conflates AHP's perception of the severity of Beery's physical impairment with AHP's interpretation of the extent of Beery's doctor-imposed work restrictions. The former involves AHP's assessment of Beery's physical condition, and the latter involves AHP's assessment of Dr. Raj's (i.e., Beery's doctor's) statements. Beery has not presented any of the former evidence, by alleging, for example, that an AHP decision-maker stated, "I am firing you because I think that you are physically unable to perform any available position in our manufacturing plant." In contrast, Beery has presented only the latter kind of evidence, establishing that an AHP decision-maker "called Beery and told him that AHP had no work for him consistent with his treating physician's stated restrictions." Op. at 4. Because the law does not prohibit AHP from firing Beery based on the fact that it did not have any available positions he could perform in light of his work restrictions, I would find that this is not a case involving direct evidence of discrimination. A fact-finder must make at least one inference when starting from this evidence — i.e., AHP's reliance on Beery's doctor-imposed work restrictions — and arriving at the conclusion that AHP unlawfully perceived Beery as disabled; namely, the

fact-finder must infer that in making the termination decision AHP did not rely merely on the doctor's statements that Beery could not twist from side to side, but that AHP *actually perceived* that Beery could not twist from side to side (i.e., that he was physically impaired) and that this perceived inability to twist prevented him from performing a broad category of jobs (i.e., substantially limited a major life activity). *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Because a fact-finder must draw inferences to conclude that "unlawful discrimination was . . . a motivating factor in [AHP's] actions," *Amini*, 440 F.3d at 359, I find that this case does not involve direct evidence of disability discrimination.

Under both Ohio and federal law, it is unlawful for an employer to terminate an employee because the employer irrationally or incorrectly regards the employee as disabled. *See* Ohio Rev. Code §§ 4112.02(A), 4112.01(A)(13); 42 U.S.C. §§ 12112(a), 12102(2)(C). The policy underlying these laws is furthered when employers remain well informed concerning their employees' physical and mental impairments, often conveyed through doctors' diagnoses, notes, and letters. Accordingly, the law generally encourages employers to ask for, rely on, and comply with doctor-imposed medical restrictions. *See Blair v. Honda of America Mfg., Inc.*, No. 14-01-33, 2002 WL 396531 (Ohio Ct. App. March 14, 2002). In the present case, AHP actively sought to comply with the work restrictions imposed by Dr. Raj and even asked Beery to provide additional documentation lessening, or at the very least clarifying, his work restrictions. Beery, however, refused to provide further documentation, and AHP concluded, based on its interpretation of Dr. Raj's ambiguous work restrictions, that Beery was unable to perform any

available positions.  The lead opinion concludes that AHP's attempt to comply with Beery's

doctor-imposed work restrictions amounts to direct evidence of disability discrimination; this

conclusion effectively punishes AHP for attempting to comply with Beery's work restrictions,

which is an unfortunate message to send to employers.

To be sure, AHP's proffered reasons for Beery's termination — i.e., that, in light of its

broad, and perhaps erroneous, reading of Dr. Raj's restrictions, it did not have any positions that

Beery could perform — provides circumstantial evidence that AHP actually perceived Beery to

be substantially limited in the major life activity of working.  Based upon this and other evidence,

I find that Beery has provided enough circumstantial evidence to withstand AHP's motion for

summary judgment and agree with the lead opinion that this case should be remanded for further

proceedings.  But I simply do not believe that Beery has produced any *direct evidence* to

establish his claim.