WHITE, Appellant,

v.

SEARS, ROEBUCK & CO. et al., Appellees.

[Cite as *White v. Sears, Roebuck & Co.,* 163 Ohio App.3d 416, 2005-Ohio-5086.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–1286.

Decided Sept. 27, 2005.

418

Cooper & Elliott, L.L.C., Rex H. Elliott, and Aaron D. Epstein, for appellant.

Seeley, Savidge & Ebert Co., L.P.A., Keith A. Savidge, and Andrew D. Bemer, for appellees.

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Jay P. White, appeals from a judgment of the Franklin County Court of Common Pleas dismissing a claim for wrongful discharge in violation of public policy that he asserted against defendants-appellees, Sears, Roebuck & Company ("Sears"), Ken Smith, Tony Bonfiglio, and Gloria Alston. For the following reasons, we affirm.

{¶ 2} On May 17, 2004, White filed suit against appellees asserting claims for wrongful discharge in violation of public policy, breach of contract, and unjust enrichment. All of White's claims stemmed from the termination of his employment with Sears.

{¶ 3} In his complaint, White alleged that Sears originally hired him as a stocking employee on May 20, 1986. White then worked for Sears in different capacities before Sears promoted him to the position of ASM Operations/Human Resources Manager for the Westland store in 2001 or 2002. As an ASM Operations/Human Resources Manager, White's responsibilities included reviewing employees' time records and assuring that those records were accurate. According to White, Sears managers routinely altered employees' time records if they were inaccurate.

{¶ 4} In September 2003, one of the employees of the Westland store punched a time card indicating that he had worked until 10:15 p.m., even though that employee had actually stopped working at 10:00 p.m. Another Sears employee altered that employee's time card to reflect the 10:00 p.m. stopping time.

{¶ 5} In late 2003, White was asked if he had altered the disputed time card and he replied that he could not remember doing so. On December 31, 2003, Sears fired White for altering the time card.

{¶ 6} Rather than answering White's complaint, appellees filed motions to dismiss it pursuant to Civ.R. 12(B)(6). In part, appellees argued that White failed to plead sufficient facts to establish a claim for wrongful discharge in violation of public policy. On September 2, 2004, the trial court issued a decision in which it agreed with appellees and dismissed White's claim for wrongful discharge in violation of public policy. The trial court held that White's claim for wrongful discharge in violation of public policy failed because he did not establish the first element of the claim—the existence of a clear public policy.

{¶ 7} On September 27, 2004, the trial court reduced to judgment its September 2, 2004 decision. On November 22, 2004, the trial court issued a second judgment entry dismissing White's claim for wrongful discharge in violation of public policy and, unlike the first judgment entry, finding that there was no just

cause to delay an immediate appeal. White now appeals from the November 22, 2004 judgment entry.

{¶ 8} On appeal, White assigns the following errors:

1. The Trial Court erred when it dismissed plaintiff's claim for wrongful discharge in violation of Ohio public policy.

2. The Trial Court erred when it ruled that Ohio does not recognize any clear public policy in favor of requiring employers to maintain accurate employee time records.

3. The Trial Court erred by confusing the "clarity" and "jeopardy" elements of a public policy wrongful discharge claim.

4. The Trial Court erred in its conclusion that terminating Mr. White under the circumstances alleged in his Complaint would not jeopardize public policy.

{¶ 9} Appellate review of a judgment granting a Civ.R. 12(B)(6) motion to dismiss is de novo. *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, at ¶ 5. When reviewing such a judgment, an appellate court must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. *Maitland v. Ford Motor Co.,* 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, at ¶ 11. For a defendant to prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief. *Cincinnati v. Beretta U.S.A. Corp.,* 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, at ¶ 5; *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323, quoting *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182.

{¶ 10} By his first assignment of error, White first argues that because he had asserted that there was a clear public policy, the trial court erred in dismissing his claim for wrongful discharge in violation of public policy. We agree.

{¶ 11} Traditionally, an employer could terminate the employment of any at-will employee for any cause, at any time whatsoever, even if the termination was done in gross or reckless disregard of the employee's rights. *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 102, 23 OBR 260, 491 N.E.2d 1114. However, in *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraphs one and two of the syllabus, the Supreme Court of Ohio recognized an exception to the employer's plenary right to terminate his employee's employment: an employer may not discharge an employee in violation of public policy. If an employer does so, the discharged employee can bring a cause of action in tort against the employer. Id. at paragraph three of the syllabus.

■ {¶ 12} To assert a viable claim for wrongful discharge in violation of public policy, a plaintiff must establish each of the following four elements:

"1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

"2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

"3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

"4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)."

(Emphasis sic.) *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 151, 677 N.E.2d 308, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398–399. Of these four elements, the first two (the clarity and jeopardy elements) are questions of law to be decided by the court. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 70, 652 N.E.2d 653. The last two (the causation and overriding justification elements) are questions of fact to be decided by a jury. Id.

■ {¶ 13} When determining whether a clear public policy exists, a court must consider both state and federal law, including the Ohio and federal Constitutions, statutes, administrative regulations, and common law. *Kulch*, supra, 78 Ohio St.3d at 152, 677 N.E.2d 308. Although a specific statute does not have to be violated in order for a claim for wrongful discharge in violation of public policy to arise, "an exception to the traditional doctrine of employment-at-will should be recognized only where the public policy alleged to have been violated is of equally serious import as the violation of a statute." *Painter v. Graley* (1994), 70 Ohio St.3d 377, 384, 639 N.E.2d 51, citing *Greeley*, supra, 49 Ohio St.3d at 234, 551 N.E.2d 981.

{¶ 14} In his complaint, White alleged that there is a clear public policy requiring employers to maintain accurate employee time records. The trial court, however, did not review federal and state law to analyze whether the public policy that White articulated existed. Rather, the trial court accepted appellees' alternative characterization of the public policy at issue, and considered only whether appellees' version of the public policy was manifested in state or federal law. This was error. In resolving a Civ.R. 12(B)(6) motion, a court is confined to the averments contained in the complaint. *Bell v. Horton* (1995), 107 Ohio App.3d 824, 826, 669 N.E.2d 546. Thus, the trial court was required to determine whether the clear public policy as articulated in the complaint, not in appellees' motions, was apparent in state or federal law.

■ {¶ 15} To prove the existence of a clear public policy requiring the maintenance of accurate employee time records, White cites the Ohio Minimum Wage Standards Act ("MWSA"), R.C. Chapter 4111 et seq., and the Fair Labor Standards Act ("FLSA"), Section 201 et seq., Title 29, U.S.Code. Both the MWSA and the FLSA require employers to make and keep employee time records. According to R.C. 4111.08, "[e]very employer * * * shall make and keep for a period of not less than three years a record of the name, address, and occupation of each of the employer's employees, the rate of pay and the amount paid each pay period to each employee, the hours worked each day and each work week by the employee * * *." Likewise, according to Section 211(c), Title 29, U.S.Code, "[e]very employer * * * shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him * * *." Section 211(c), Title 29, U.S.Code is implemented by Section 516.2, Title 29, C.F.R., which lists the exact type of information an employer must maintain, including "[h]ours worked each workday and total hours worked each workweek." Section 516.2(a)(7), Title 29, C.F.R.

{¶ 16} Although neither the state nor federal codified law specifically states that employee records must be "accurate," R.C. 4111.13(A) prohibits an employer from falsifying employee records. Similarly, Section 215(a)(5), Title 29, U.S.Code prohibits an employer from making any employee record "knowing that such * * * record [is] false in a material respect."

{¶ 17} Further, federal courts have interpreted Section 211(c), Title 29, U.S.Code and/or Section 516.2, Title 29, C.F.R. to require employers to maintain "adequate," "proper," "true," and "accurate" employee time records. *Anderson v. Mt. Clemens Pottery Co.* (1946), 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 ("it is the employer who has the duty under § 11(c) of the [FLSA] to keep proper records of wage, hours and other conditions and practices of employment"); *Walton v. United Consumers Club, Inc.* (C.A.7, 1986), 786 F.2d 303, 314 ("Section 11(c) of the FLSA, 29 U.S.C. § 211(c), requires every employer to keep an accurate record of the hours worked by each employee"); *Dunlop v. Gray–Goto, Inc.* (C.A.10, 1976), 528 F.2d 792, 795 ("the duty to keep adequate and accurate records under the [FLSA] rests squarely on the employer"); *Kline v. Wirtz* (C.A.5, 1967), 373 F.2d 281, 282 ("the Employer has the obligation to maintain accurate time and wage records"); *Schwind v. EW & Assoc., Inc.* (S.D.N.Y.2005), 357 F.Supp.2d 691, 707 ("Pursuant to 29 U.S.C. § 211(c), an employer has the duty to keep accurate records of employees' 'wages, hours, and other conditions and practices of employment'"); *Herman v. Hector I. Nieves Transp., Inc.* (D.P.R.2000), 91 F.Supp.2d 435, 449 ("The Secretary's implementing regulations are found at 29 C.F.R. § 516 and require, inter alia, that employers preserve, for

three years, true and accurate records of: (1) the total daily and weekly hours employees work * * * "); *Herman v. Palo Group Foster Home, Inc.* (W.D.Mich. 1997), 976 F.Supp. 696, 701 (Section 211(c), Title 29, U.S.Code and Section 516, Title 29, C.F.R. "require that, among other things, employers maintain accurate records of the number of hours worked each workday and workweek by each employee"); *Reich v. Cole Ents., Inc.* (S.D.Ohio 1993), 901 F.Supp. 255 (defendants violated Section 211(c), Title 29, U.S.Code and Section 215(a)(5), Title 29, U.S.Code "in that they * * * failed to make, keep and preserve adequate and accurate records of their employees and of the wages, hours and other conditions and practices of employment * * * ").

{¶ 18} Moreover, maintaining accurate employee time records is integral to the effectiveness of the MWSA and the FLSA. Failure to make and keep accurate employee time records " 'can obscure a multitude of minimum wage and overtime violations.' " *Moon v. Kwon* (S.D.N.Y.2002), 248 F.Supp.2d 201, 218, quoting *Wirtz v. Mississippi Publishers Corp.* (C.A.5, 1966), 364 F.2d 603, 607 (Section 211(c), Title 29, U.S.Code and Section 516.2, Title 29, C.F.R. requirements are not mere technicalities, but rather, " 'fundamental underpinnings' " of the FLSA). Thus, if employers are not required to make and keep accurate employee time records, the purpose of both the MWSA and the FLSA—to ensure a fair day's work for a fair day's pay—will be subverted. *A.H. Phillips, Inc. v. Walling* (1945), 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095.

{¶ 19} Accordingly, given the MWSA's and the FLSA's statutory and administrative provisions, we conclude that both Ohio and federal law manifest a clear public policy requiring employers to maintain accurate employee time records.

{¶ 20} Appellees, however, argue otherwise based upon *Shugars v. Allied Machine & Eng. Corp.*, Tuscarawas App. No. 2002–CA–10–0085, 2003-Ohio-4672, 2003 WL 22053933. In *Shugars*, the plaintiff accessed her computerized time records and corrected inaccuracies contained therein. Id. at ¶ 3. After the plaintiff's employer terminated her at-will employment for altering her time records, the plaintiff filed suit against her employer and asserted a claim of wrongful discharge in violation of public policy. Id. at ¶ 5. The plaintiff asserted that the FLSA manifested a clear public policy that employers must maintain accurate employee time records and pay employees for all time worked. Id. at ¶ 31. On an appeal of a judgment granting the employer's summary judgment motion, the appellate court considered "whether a State or Federal statute was violated, creating an exception to the at-will employment." Id. at ¶ 30. Because the court found that the evidence did not establish a violation of the FLSA, the court concluded that the trial court did not err in granting summary judgment against the plaintiff on her claim for wrongful discharge in violation of public policy. Id. at ¶ 32–33.

{¶ 21} Because the *Shugars* court's analysis is not consistent with current Supreme Court of Ohio precedent, we decline to follow its holding in the instant case. Rather than determine whether the FLSA manifested a clear public policy favoring the creation and retention of accurate employee records, the *Shugars* court focused on whether any provision of the FLSA was violated. The Supreme Court explicitly rejected this approach in *Kulch,* supra, 78 Ohio St.3d at 150, 677 N.E.2d 308, when it stated:

> If there was ever any serious question whether a specific statute had to be violated for *Greeley* to apply, *Painter* answered that question in the negative * * *. See *Painter,* paragraph three of the syllabus. The question whether the *Greeley* public-policy exception to the employment-at-will doctrine applies only in cases involving a statutory violation was soundly rejected not only in *Painter,* but in the recent case of *Collins* * * *.

Therefore, although the facts of the *Shugars* case are similar to the case at bar, the holding has no bearing on whether there is a clear public policy regarding an employer's responsibility to maintain accurate employee time records.

{¶ 22} The existence of a clear public policy satisfies only the first element of White's claim for wrongful discharge in violation of public policy. We now turn to the second element of the claim and examine whether the termination of White's employment jeopardized the clear public policy at issue.

{¶ 23} As the trial court found that White's claim for wrongful discharge in violation of public policy failed because he did not assert a clear public policy, the trial court did not address the jeopardy element. However, because our review of a judgment granting a Civ.R. 12(B)(6) motion to dismiss is de novo, *Perrysburg Twp.,* supra, 103 Ohio St.3d at ¶ 5, we may address this second ground on which appellees sought a dismissal of White's claim.

{¶ 24} When analyzing the jeopardy element, a court must inquire "into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim." *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, at ¶ 15, citing 2 Perritt, Employee Dismissal Law and Practice (4th Ed.1998), 44, Section 7.17. If a statutory remedy that adequately protects society's interests already exists, then there is no need to recognize a claim for wrongful discharge in violation of public policy. Id. Thus, for example, a plaintiff fired for protesting accounting irregularities, who can establish a clear public policy in favor of accuracy in corporate record keeping, must also establish that the other means for promoting the policy, such as regulatory requirements for audits, criminal penalties, and rights of shareholders and creditors to maintain private civil actions, are inadequate. 2 Perritt, supra, at 44, Section 7.17

{¶ 25} Following this rule, this court held that the jeopardy element was not satisfied in *Jurczak v. J & R Schugel Trucking Co.*, Franklin App. No. 03AP–451, 2003-Ohio-7039, 2003 WL 22999504. There, the plaintiff asserted that Ohio criminal law manifested a clear public policy prohibiting individuals under the influence of narcotic drugs from operating a motor vehicle. Id. at ¶ 31. The plaintiff argued that this public policy would be jeopardized if he could not bring a claim for wrongful discharge in violation of public policy against his employer for discharging him for refusing to work when he was ill and on a narcotic medication. Id. We disagreed. Because federal law imposes civil and criminal penalties on employers who require an employee to drive a commercial motor vehicle while taking a narcotic medication, this court found that adequate statutory remedies existed promoting the public policy at issue. Id. at ¶ 35.

{¶ 26} In the case at bar, both the MSWA and the FLSA contain alternative means for promoting the clear public policy requiring employers to maintain accurate employee time records. The MSWA gives the Director of Commerce the power to enter the place of business of any employer to inspect the employee time records and question employees to ascertain whether the employer has properly made and kept the records. R.C. 4111.04(B). If the employer has failed to make, keep, and preserve employee time records or falsified employee time records, the MSWA imposes criminal liability. R.C. 4111.99(A).

{¶ 27} Similar to MSWA, the FLSA gives the Secretary of Labor the power to investigate any employer to determine whether that employer has failed to make and keep accurate employee time records. Section 211(a), Title 29, U.S.Code. If the Secretary of Labor ascertains that the employer is not making and keeping accurate employee time records, he may seek an injunction requiring the employer to comply with the record-keeping requirements. Section 211(a), Title 29, U.S.Code; Section 217, Title 29, U.S.Code. See, e.g., *Herman v. Hector I. Nieves Transp., Inc.*, supra, at 451 (enjoining an employer from continued and future violations of Section 211(c), Title 29, U.S.Code). Additionally, if the employer willfully fails to make and preserve accurate employee records, the FLSA imposes criminal penalties. Section 216(a), Title 29, U.S.Code.

{¶ 28} Given the regulatory oversight and the civil and criminal penalties, the public policy requiring the maintenance of accurate employee time records is adequately protected. Consequently, we find that White's discharge does not jeopardize the public policy at issue, and, thus, we need not recognize a claim for wrongful discharge in violation of public policy in these circumstances.

{¶ 29} Accordingly, we conclude that the trial court properly dismissed White's claim for wrongful discharge in violation of public policy. Therefore, we overrule White's first assignment of error.

{¶ 30} Because White's first assignment of error was so broadly drafted as to encompass the arguments raised by the remaining assignments of error, we find that the remaining assignments of error are moot.

{¶ 31} For the foregoing reasons, we overrule White's first assignment of error, and overrule his second, third, and fourth assignments of error as moot. Therefore, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BROWN, P.J., and SADLER, J., concur.