[Cite as *Kara v. Ohio Dept. of Taxation*, 2013-Ohio-5944.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JAMES KARA

      Plaintiff

      v.

OHIO DEPARTMENT OF TAXATION

      Defendant

Case No. 2012-03794

Judge Patrick M. McGrath
Magistrate Holly True Shaver

DECISION

{¶ 1} On June 21, 2013, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On July 17, 2013, plaintiff filed his response. The motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also*

*Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} In January 2010, plaintiff began his employment with defendant as a Tax Auditor Agent in defendant's Cleveland office. This position was within the Classified Civil Service and plaintiff was required to serve a 180-day probationary period. His direct supervisor was Beth Lowe, who was based in the Akron office, but he was also assigned a mentor in the Cleveland office, James Goldyn, Tax Auditor Agent 4. Plaintiff alleges that throughout his employment he witnessed another employee, Ron Myeress, being verbally harassed by a manager, Patrick Mancuso, which resulted in Myeress filing a grievance through the union. Plaintiff alleges Lowe conducted his mid-probationary review in April 2010 and that Lowe told him that he "met or was above" the performance target. However, shortly after conducting the review, Lowe asked plaintiff if he had witnessed any of the alleged harassment involving Myeress. When plaintiff responded that he had witnessed it but that he did not want to be involved with the grievance, Lowe told plaintiff that she could terminate his employment for any reason and that by not speaking on behalf of the management, he was not helping his chances of continued employment. Plaintiff alleges that he told Lowe that he would think about testifying. Plaintiff ultimately decided not to become involved in Myeress' grievance.

{¶ 5} On July 13, 2010, plaintiff met with Lowe and Paula Finnin for his final probationary review, at which time plaintiff was informed that he was being discharged. Plaintiff claims that Lowe concocted examples of unsatisfactory performance to justify the decision to terminate his employment with defendant; that the true reason defendant terminated his employment was his refusal to lie on behalf of management regarding Myeress' grievance. Plaintiff asserts claims for wrongful discharge in violation in public policy and libel.

{¶ 6} In its motion for summary judgment, defendant argues that plaintiff cannot establish claims for discharge in violation of public policy and libel.

## I. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

{¶ 7} Defendant argues that plaintiff cannot establish a claim for discharge in violation of public policy inasmuch as he was hired within the Classified Civil Service pursuant to R.C. Chapter 124 and as such, he is not an at-will employee. Plaintiff asserts that he was a probationary employee and an at-will employee. "As a probationary civil service employee, [plaintiff] had no property interest in continued employment sufficient to warrant procedural due process protection because [his] appointment was not final until he satisfactorily completed [his] probationary period." *State ex rel. Rose v. Ohio Dept. of Rehab. & Corr.*, 91 Ohio St.3d 453, 458 (2001); *see also Wissler v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 09AP-569, 2010-Ohio-3432, *Browning v. Ohio State Hwy. Patrol*, 151 Ohio App.3d 798, 2003-Ohio-1108 (10th Dist.). Therefore, the court finds that plaintiff, as a probationary employee, is not subject to the provisions of R.C. Chapter 124, and that he was an at-will employee.

{¶ 8} As a general rule, the common law doctrine of employment-at-will governs employment relationships in Ohio. *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994. In an at-will employment relationship, either an employer or an employee may legally terminate the employment relationship at any time and for any reason. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103 (1985). A public policy exception to the employment-at-will doctrine was first recognized by the Supreme Court of Ohio in *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (1990). In *Greeley*, the court held that "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Id.* at 234. The public policy exception to the employment-at-will doctrine "is not limited to public policy expressed by the General Assembly in the form of statutory enactments" but "may [also] be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation,

administrative rules and regulations, and the common law." *Painter v. Graley*, 70 Ohio St.3d 377, 383-384 (1994).

{¶ 9} In order to establish a claim for wrongful termination in violation of public policy, plaintiff must prove: 1) a clear public policy manifested in a statute, regulation, or the common law (the clarity element); 2) that discharging an employee under circumstances like those involved would jeopardize the policy (the jeopardy element); 3) that the discharge at issue was motivated by conduct related to the policy (the causation element); and 4) that there was no overriding business justification for the discharge (the overriding justification element). *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 151 (1997). The clarity and jeopardy elements are questions of law, while causation and overriding justification elements are questions of fact. *Collins v. Rizkana*, 73 Ohio St.3d 65, 70 (1995).

A. The Clarity Element

{¶ 10} As to the issue of clarity, the question is whether there is a clear public policy to protect a specific public interest sufficient to justify an exception to the at-will employment doctrine. *Id.* Here, plaintiff relies upon statutes criminalizing the subornation of perjury in support of his claim. For example, 18 U.S.C. 1622 states: "Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both." *See Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, ¶ 21 ("public policy [must be] drawn from the federal or state constitution, *federal or state statutes*, administrative rules and regulations, or common law." Emphasis added.).

{¶ 11} Further, plaintiff asserts that Ohio's statute criminalizing coercion states a clear public policy. R.C. 2905.12(A) states, in part: "No person, with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice, shall do any of the following: * * * (5) Take, withhold, or

threaten to take or withhold official action, or cause or threaten to cause official action to be taken or withheld."

{¶ 12} "'It would be obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge any employee, whether the employment be for a designated or unspecified duration, on the ground that the employee declined to commit perjury, an act specifically enjoined by statute.'" *Collins, supra*, at 68, quoting *Petermann v. Internatl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 396*, 174 Cal. App.2d 184, 188-189 (1959).[1] "Although there may have been no actual crime committed, there is nevertheless a violation of public policy to compel an employee to forgo his or her legal protections or to do an act ordinarily proscribed by law." *Collins, supra,* at 71. Accordingly, the court finds that plaintiff has met his requisite burden to articulate, by citation to its source, a clear public policy.

{¶ 13} Plaintiff also cites R.C. 124.56 as a clear public policy. This statute mandates that the State Personnel Board of Review conduct an investigation when it has reason to believe that a "person having the power of * On June 21, 2013, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On July 17, 2013, plaintiff filed his response. The motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 14} Civ.R. 56(C) states, in part, as follows:

{¶ 15} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1]"[E]mployees discharged for 'refusal to participate in activities which arguably violate' criminal laws state a claim for wrongful discharge in violation of public policy." *Anders v. Specialty Chem. Resources, Inc.*, 121 Ohio App.3d 348, 355 (8th Dist.1997), quoting *Collins, supra,* at 71.

judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 16} In January 2010, plaintiff began his employment with defendant as a Tax Auditor Agent in defendant's Cleveland office. This position was within the Classified Civil Service and plaintiff was required to serve a 180-day probationary period. His direct supervisor was Beth Lowe, who was based in the Akron office, but he was also assigned a mentor in the Cleveland office, James Goldyn, Tax Auditor Agent 4. Plaintiff alleges that throughout his employment he witnessed another employee, Ron Myeress, being verbally harassed by a manager, Patrick Mancuso, which resulted in Myeress filing a grievance through the union. Plaintiff alleges Lowe conducted his mid-probationary review in April 2010 and that Lowe told him that he "met or was above" the performance target. However, shortly after conducting the review, Lowe asked plaintiff if he had witnessed any of the alleged harassment involving Myeress. When plaintiff responded that he had witnessed it but that he did not want to be involved with the grievance, Lowe told plaintiff that she could terminate his employment for any reason and that by not speaking on behalf of the management, he was not helping his chances of continued employment. Plaintiff alleges that he told Lowe that he would think about testifying. Plaintiff ultimately decided not to become involved in Myeress' grievance.

{¶ 17} On July 13, 2010, plaintiff met with Lowe and Paula Finnin for his final probationary review, at which time plaintiff was informed that he was being discharged. Plaintiff claims that Lowe concocted examples of unsatisfactory performance to justify

the decision to terminate his employment with defendant; that the true reason defendant terminated his employment was his refusal to lie on behalf of management regarding Myeress' grievance.  Plaintiff asserts claims for wrongful discharge in violation in public policy and libel.

{¶ 18} In its motion for summary judgment, defendant argues that plaintiff cannot establish claims for discharge in violation of public policy and libel.

{¶ 19} Defendant argues that plaintiff cannot establish a claim for discharge in violation of public policy inasmuch as he was hired within the Classified Civil Service pursuant to R.C. Chapter 124 and as such, he is not an at-will employee.  Plaintiff asserts that he was a probationary employee and an at-will employee.  "As a probationary civil service employee, [plaintiff] had no property interest in continued employment sufficient to warrant procedural due process protection because [his] appointment was not final until he satisfactorily completed [his] probationary period." *State ex rel. Rose v. Ohio Dept. of Rehab. & Corr.*, 91 Ohio St.3d 453, 458 (2001); *see also Wissler v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 09AP-569, 2010-Ohio-3432, *Browning v. Ohio State Hwy. Patrol*, 151 Ohio App.3d 798, 2003-Ohio-1108 (10th Dist.).  Therefore, the court finds that plaintiff, as a probationary employee, is not subject to the provisions of R.C. Chapter 124, and that he was an at-will employee.

{¶ 20} As a general rule, the common law doctrine of employment-at-will governs employment relationships in Ohio.  *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994.  In an at-will employment relationship, either an employer or an employee may legally terminate the employment relationship at any time and for any reason.  *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103 (1985).  A public policy exception to the employment-at-will doctrine was first recognized by the Supreme Court of Ohio in *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (1990).  In *Greeley*, the court held that "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is

prohibited by statute." *Id.* at 234.  The public policy exception to the employment-at-will doctrine "is not limited to public policy expressed by the General Assembly in the form of statutory enactments" but "may [also] be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law." *Painter v. Graley*, 70 Ohio St.3d 377, 383-384 (1994).

{¶ 21} In order to establish a claim for wrongful termination in violation of public policy, plaintiff must prove: 1) a clear public policy manifested in a statute, regulation, or the common law (the clarity element); 2) that discharging an employee under circumstances like those involved would jeopardize the policy (the jeopardy element); 3) that the discharge at issue was motivated by conduct related to the policy (the causation element); and 4) that there was no overriding business justification for the discharge (the overriding justification element). *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 151 (1997).  The clarity and jeopardy elements are questions of law, while causation and overriding justification elements are questions of fact. *Collins v. Rizkana*, 73 Ohio St.3d 65, 70 (1995).

{¶ 22} As to the issue of clarity, the question is whether there is a clear public policy to protect a specific public interest sufficient to justify an exception to the at-will employment doctrine. *Id.*  Here, plaintiff relies upon statutes criminalizing the subornation of perjury in support of his claim.  For example, 18 U.S.C. 1622 states: "Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both." *See Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, ¶ 21 ("public policy [must be] drawn from the federal or state constitution, *federal or state statutes*, administrative rules and regulations, or common law." Emphasis added.).

{¶ 23} Further, plaintiff asserts that Ohio's statute criminalizing coercion states a clear public policy.  R.C. 2905.12(A) states, in part: "No person, with purpose to coerce

another into taking or refraining from action concerning which the other person has a legal freedom of choice, shall do any of the following: * * * (5) Take, withhold, or threaten to take or withhold official action, or cause or threaten to cause official action to be taken or withheld."

{¶ 24} "'It would be obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge any employee, whether the employment be for a designated or unspecified duration, on the ground that the employee declined to commit perjury, an act specifically enjoined by statute.'" *Collins, supra*, at 68, quoting *Petermann v. Internatl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 396*, 174 Cal. App.2d 184, 188-189 (1959).[2] "Although there may have been no actual crime committed, there is nevertheless a violation of public policy to compel an employee to forgo his or her legal protections or to do an act ordinarily proscribed by law." *Collins, supra,* at 71.  Accordingly, the court finds that plaintiff has met his requisite burden to articulate, by citation to its source, a clear public policy.

{¶ 25} Plaintiff also cites R.C. 124.56 as a clear public policy.  This statute mandates that the State Personnel Board of Review conduct an investigation when it has reason to believe that a "person having the power of * * * removal, has abused such power by * * * removal of an employee under his or their jurisdiction in violation of this chapter of the Revised Code * * *." R.C. 124.56.  Once the investigation is completed, the findings are reported to the governor, who may remove the person who abused the power.  The Supreme Court of Ohio has determined that "second-half probationary employees" may use R.C. 124.56 to redress the "[a]buse of the discretion granted to those having the power of removal." *Walton v. Montgomery Cty. Welfare Dept.*, 69 Ohio

---

[2]"[E]mployees discharged for 'refusal to participate in activities which arguably violate' criminal laws state a claim for wrongful discharge in violation of public policy." *Anders v. Specialty Chem. Resources, Inc.*, 121 Ohio App.3d 348, 355 (8th Dist.1997), quoting *Collins, supra,* at 71.

St.2d 58, 64 (1982).  Plaintiff has met his burden of articulating a clear public policy against abuse of power.

## B. The Jeopardy Element

{¶ 26} "When analyzing the jeopardy element, a court must inquire 'into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim.'"  *White v. Sears, Roebuck & Co.*, 163 Ohio App.3d 416, 2005-Ohio-5086, ¶ 24 (10th Dist.), quoting *Wiles, supra*, ¶ 15.  "If a statutory remedy that adequately protects society's interests already exists, then there is no need to recognize a claim for wrongful discharge in violation of public policy."  *Id.*  "In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct."  *Wiles, supra.*  Thus, plaintiff must establish that the other means for promoting the public policy are inadequate.  *See White, supra.*  The court finds that there is not an alternate means for plaintiff to vindicate the public policy at issue.  The criminal statutes plaintiff cites do not provide a remedy for his discharge.

{¶ 27} Similarly, R.C. 124.56 "says nothing about an adjudication of individual employee rights" and the State Personnel Board of Review cannot order reinstatement of the removed employee pursuant to R.C. 124.56.  *State ex rel. Carver v. Hull*, 70 Ohio St.3d 570, 576 (1994).  Accordingly, plaintiff has established the jeopardy element.

## C. The Causation Element

{¶ 28} Turning to the causation element, construing the evidence most strongly in plaintiff's favor, there is a genuine issue of material fact as to whether plaintiff's discharge was motivated by conduct related to the public policy.  In support of its motion

for summary judgment, defendant filed the affidavit of Beth Lowe, plaintiff's supervisor, who avers that she never spoke to plaintiff about a grievance involving Myeress; that at the time of plaintiff's mid-probationary review, she was not aware of any grievance involving Myeress; and that plaintiff's performance evaluations were based solely upon plaintiff's performance.

{¶ 29} In response, plaintiff filed his own affidavit where he states that after his mid-probationary review, which was conducted on April 15, 2010, Lowe approached him to discuss whether he had witnessed the harassment that Myeress complained of; that she told him he needed to speak on behalf of the management; and that Lowe informed him that he was not helping his status as a probationary employee if he did not get involved.   Plaintiff further states that he did not become involved and that his employment was terminated in July 2010.  Accordingly, the court finds that there is a genuine issue of material fact whether plaintiff's alleged refusal to lie motivated defendant's decision to discharge plaintiff.

D. The Overriding Justification Element

{¶ 30} Finally, defendant argues that Lowe's probationary removal of plaintiff was solely based upon his unsatisfactory performance and thus, it had an overriding business justification for terminating plaintiff.  In her affidavit, Lowe states that plaintiff's work was not meeting her expectations at his mid-probationary review, especially in the areas of quality of work and communications; and that throughout his probationary period, she determined that plaintiff did not have the necessary skills for the job.  However, in response, plaintiff states in his affidavit that Lowe told him during his mid-probationary review that his work met his "performance target."   Further, plaintiff provided the affidavit of plaintiff's mentor, James Goldyn.  Goldyn stated that he found plaintiff to be responsible, polite, and respectful to authority; that plaintiff possessed good computer skills; and that plaintiff appeared to communicate well.  Therefore, the

court finds that there are genuine issues of material fact as to whether there was an overriding business justification for plaintiff's probationary removal. Accordingly, defendant is not entitled to judgment as a matter of law on plaintiff's claim for wrongful discharge in violation of public policy.

## II. DEFAMATION

{¶ 31} In his complaint, plaintiff alleges that defendant published negative statements in his performance review that had no basis in fact and which caused harm to his reputation. In its motion for summary judgment, defendant challenges plaintiff's ability to establish a prima facie case of libel. "Defamation is the unprivileged publication of a false and defamatory matter about another. A defamatory statement is one which tends to cause injury to a person's reputation or exposes him to public hatred, contempt, ridicule, shame, or disgrace or affects him adversely in his trade or business." *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 353 (6th Dist.1992) (Internal citations omitted.) Defamation comes in two forms: "slander, which is spoken; and libel, which is written." *Crase v. Shasta Beverages, Inc.*, 10th Dist. No. 11AP-519, 2012-Ohio-326, ¶ 46. "The elements of a defamation action, whether slander or libel, are that: (1) the defendant made a false and defamatory statement concerning another; (2) that the false statement was published; (3) that the plaintiff was injured; and (4) that the defendant acted with the required degree of fault." *Id.*

{¶ 32} In her affidavit, Lowe states:

{¶ 33} "16. To the best of my knowledge, no one has requested information regarding [plaintiff's] employment with the office. It is my understanding that when references are requested, [defendant] provides basic information relative to dates of service and rate of pay. I am not aware of any instance wherein [defendant] has produced employee evaluations pursuant to a reference check."

{¶ 34} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E). Plaintiff's response to defendant's motion fails to set forth specific facts showing that his performance evaluations were published to a third party. Therefore, defendant is entitled to judgment as a matter of law on plaintiff's claim of defamation. However, defendant is not entitled to judgment as a matter of law on plaintiff's wrongful discharge in violation of public policy claim. Accordingly, defendant's motion for summary judgment shall be granted, in part, and denied, in part.

_____
PATRICK M. MCGRATH
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JAMES KARA

     Plaintiff

     v.

OHIO DEPARTMENT OF TAXATION

     Defendant

Case No. 2012-03794

Judge Patrick M. McGrath
Magistrate Holly True Shaver

<u>JUDGMENT ENTRY</u>

    {¶ 35} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED, in part, as to Count Two of plaintiff's complaint but DENIED as to Count One.

                                     _____

                                     PATRICK M. MCGRATH
                                     Judge

cc:

David W. Neel
55 Public Square, Suite 1950
Cleveland, Ohio 44113

Velda K. Hofacker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

002
Filed August 26, 2013
Sent to S.C. Reporter April 30, 2014