[Cite as *McCulloch v. Ohio Dept. of Transp.*, 2014-Ohio-4946.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Travis McCulloch, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 14AP-357 |
| v. | : | (Ct. of Cl. No. 2013-00637) |
| Ohio Department of Transportation, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 6, 2014

*Jonathan M. Layman, Attorney at Law, LLC*, and *Jonathan M. Layman*, for appellant.

*Michael DeWine*, Attorney General, and *Eric A. Walker*, for appellee.

APPEAL from the Court of Claims of Ohio

O'GRADY, J.

{¶ 1} Plaintiff-appellant, Travis McCulloch, appeals from a judgment of the Court of Claims of Ohio which granted summary judgment in favor of defendant-appellee, the Ohio Department of Transportation ("ODOT"). For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On November 16, 2012, appellant applied for a position as a Highway Technician I with ODOT. The duties of the position involved highway maintenance, including spraying vegetation with pesticides and signing pesticide reports. Appellant responded to questions about his qualifications in the employment application and indicated he "just got [his] commercial license to spray [vegetation]." (R. 15, exhibit B.) Appellant was hired full-time on January 14, 2013.

{¶ 3} During his probationary period, ODOT conducted an investigation into whether appellant had a commercial license to spray vegetation at the time he submitted his application. ODOT learned he did not, since he failed to pay an additional administrative fee in order to obtain his license. ODOT issued appellant a letter informing him that his employment was terminated because he submitted false information on his employment application. Appellant resigned before his termination took effect.

{¶ 4} On October 25, 2013, appellant filed a complaint in the Court of Claims against ODOT, alleging wrongful termination in violation of public policy, fraud, and defamation. ODOT filed a motion for summary judgment on February 6, 2014. ODOT asserted appellant was not wrongfully discharged; instead, he was terminated for falsifying information on his job application. ODOT also argued appellant failed to prove the elements of fraud and pointed to the lack of evidence that it made a false statement to appellant or concealed any fact from him. Finally, ODOT contended appellant could not prove his defamation claim, and, in any event, its actions were protected by qualified privilege. Accordingly, ODOT asserted it was entitled to judgment as a matter of law.

{¶ 5} In his memorandum contra, appellant maintained he was wrongfully discharged in violation of a clear public policy in favor of proper regulation and documentation of spraying. Appellant argued the statement regarding his license on the employment application was true, since he was referring to the fact that he just passed his examination to obtain his license to spray vegetation. He pointed out a commercial license to spray was not a requirement of the position for which he applied. Appellant also pointed out ODOT chose to use him as a commercial sprayer without verifying whether he was properly licensed. When he told his supervisor he did not have a license card like other employees, appellant claimed he was ignored. Appellant argued there was no legitimate business justification for terminating him. Instead, appellant claimed ODOT falsified forms regarding his spraying activities and discharged him to avoid consequences for allowing him to spray without a commercial license. Appellant claimed ODOT told prospective employers he was dishonest and falsified his employment application. Appellant argued ODOT damaged his professional reputation, rendering him unemployable. In addition, appellant maintained his supervisor made a fraudulent

omission when he ignored appellant's concerns about not having a license card like his co-workers.

{¶ 6} On April 17, 2014, the Court of Claims rendered a decision and entered judgment granting ODOT's motion for summary judgment. Appellant timely appealed to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 7} Appellant presents us with two assignments of error for our review:

> [I.] THE APRIL 17, 2014 DECISION AND ENTRY FAILS TO IDENTIFY MULTIPLE GENUINE ISSUES OF MATERIAL FACT FOR TRIAL.
>
> [II.] THE APRIL 17, 2014 DECISION AND ENTRY ERRS AS A MATTER OF LAW BY FAILING TO IDENTIFY A CLEAR PUBLIC POLICY IN THE REGULATION OF CHEMICAL SPRAYING.

## III. STANDARD OF REVIEW

{¶ 8} Appellate review of summary judgments is de novo. *Titenok v. Wal-Mart Stores E., Inc.*, 10th Dist. No. 12AP-799, 2013-Ohio-2745, ¶ 6; *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995). "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Harris v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-466, 2013-Ohio-5714, ¶ 6. "[S]ummary judgment is proper only when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977); Civ.R. 56(C).

## IV. DISCUSSION

### A. Defamation

{¶ 9}   Under his first assignment of error, appellant contends, in part, that the Court of Claims erred when it granted ODOT summary judgment on his defamation claim.

{¶ 10} Defamation is the unprivileged publication of a false and defamatory statement about another. *Watley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 07AP-902, 2008-Ohio-3691, ¶ 26, citing *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 353 (6th Dist.1992), citing *McCarthy v. Cincinnati Enquirer, Inc.*, 101 Ohio App. 297 (1st Dist.1956). "A defamatory statement is one which tends to cause injury to a person's reputation or exposes him to public hatred, contempt, ridicule, shame or disgrace or adversely affects him in his trade or business." *Id.*, citing *McCartney* at 353, citing *Matalka v. Lagemann*, 21 Ohio App.3d 134, 136 (10th Dist.1985). "To prevail on a defamation claim, whether libel or slander, a plaintiff must prove the following elements: (1) a false statement, (2) about the plaintiff, (3) was published without privilege to a third party, (4) with fault or at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff." *Savoy v. Univ. of Akron*, 10th Dist. No. 13AP-696,2014-Ohio-3043, ¶ 18, citing *Schmidt v. Northcoast Behavorial Healthcare*, 10th Dist. No. 10AP-565, 2011-Ohio-777, ¶ 8, citing *McPeek v. Leetonia Italian-Am. Club*, 174 Ohio App.3d 380, 2007-Ohio-7218, ¶ 8 (7th Dist.).

{¶ 11} In his appellate brief, appellant points out that at the trial level, he averred ODOT "has told prospective employers that I am a dishonest person who committed fraud." (R. 18, McCulloch affidavit, ¶ 22.)  He also averred that since his termination by ODOT, he has been unable to find employment.  Appellant contends the truthfulness of the statement about his license on his employment application presents a genuine issue of material fact for trial; thus, there is a genuine dispute about whether statements allegedly made to potential employers by ODOT were false and defamatory.  In other portions of his appellate brief, appellant contends the statement on his application was true because (1) the statement was made in response to a question about courses he had successfully completed, and he had completed coursework and passed an exam to become a licensed

sprayer, (2) he was under a mistaken, justifiable belief that he in fact had a license, (3) after ODOT hired him, he attempted to confirm his licensure with the supervisor who ignored his inquiries about a license card.

{¶ 12} Initially, we note appellant's averment that ODOT made statements to prospective employers regarding his honesty was vague and does not appear to be based on personal knowledge. Additionally, appellant's argument ignores the Court of Claims' finding that the only specific statement he identified in his deposition was protected by a qualified privilege. Even putting these issues aside, the argument appellant makes on appeal lacks merit because it is readily apparent that the statement on appellant's employment application that he "just got [his] commercial license to spray" was false. (R. 15, exhibit B.) Appellant did not have a license when he filed his application. The fact that appellant made the statement about his license in response to a question about his education and was mistaken about his licensed status is irrelevant. Likewise, appellant's efforts to verify his license status *after* being hired by ODOT does not alter the falsity of the statement on his employment application. Therefore, we find no error in the grant of summary judgment to ODOT on the defamation claim and overrule the defamation portion of the first assignment of error.

### B. Fraud

{¶ 13} Under his first assignment of error, appellant also contends that the Court of Claims erred when it granted ODOT summary judgment on his fraud claim.

{¶ 14} "Fraud is defined as (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance." *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 98 (10th Dist.2000), citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998). In order to establish a claim of fraud, a party must prove all the elements. *Id.*

{¶ 15} According to appellant, he asked his supervisor at ODOT why he did not have a license card like other employees, and his supervisor replied "I don't want to hear

about that."   (Appellant's Brief, 13.)   The supervisor had a license to spray vegetation himself; thus, according to appellant, the supervisor should have known appellant needed a license card.  Appellant claims his supervisor made an "intentional omission" when he did not tell appellant he needed a license card, which constituted fraud.   (Appellant's Brief, 13.)

{¶ 16} As the Court of Claims recognized, appellant testified his supervisor did not know appellant was unlicensed.  Appellant acknowledged his supervisor believed he was licensed based on his statement on his employment application.  The brief exchange identified by appellant about his lack of a license card, not an actual license, does not create a genuine issue of material fact precluding summary judgment.  Furthermore, any assertion or omission the supervisor may have made occurred during appellant's employment, well after appellant submitted his employment application.  Appellant's separation from employment resulted from the fact that he represented on his employment application he had a commercial license to spray when he did not.  Therefore, appellant's fraud claim fails because there is no causal connection between the supposed "intentional omission" by his supervisor and his separation from employment.  Thus, the trial court did not err in entering summary judgment on appellant's fraud claim, and we overrule the fraud portion of the first assignment of error.

## C.  *Wrongful Discharge in Violation of Public Policy*

{¶ 17} Under the remainder of appellant's first assignment of error, he contends genuine issues of material fact precluded summary judgment on his wrongful discharge claim.  Under his second assignment of error, appellant asserts the Court of Claims erred by failing to identify a clear public policy in the regulation of chemical spraying with regard to the wrongful discharge claim.  We will address these arguments together.

{¶ 18} Appellant claims he was wrongfully discharged in violation of public policy. In general, an employer can "terminate the employment of any at-will employee for any cause, at any time whatsoever, even if the termination was done in gross or reckless disregard of the employee's rights." *Moore v. Impact Community Action*, 10th Dist. No. 12AP-1030, 2013-Ohio-3215, ¶ 7, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 67 (1995); *Phung v. Waste Mgt., Inc.*, 23 Ohio St.3d 100, 102 (1986).  However, the Supreme Court of Ohio recognized this right to terminate employment for any cause no longer includes

the discharge of an employee where the discharge is in violation of a statute and therefore contravenes public policy. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (1990), paragraphs one and two of the syllabus. If an employer does so, the discharged employee may bring a cause of action in tort against the employer. *Id.* at paragraph three of the syllabus.

{¶ 19} To assert a viable claim for wrongful discharge in violation of public policy, a plaintiff must establish each of the following elements:

> "1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

(Emphasis sic.) *White v. Sears, Roebuck & Co.*, 163 Ohio App.3d 416, 2005-Ohio-5086, ¶ 12 (10th Dist.), quoting *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 151 (1997); *Wissler v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 09AP-569, 2010-Ohio-3432, ¶ 18. The first two elements are questions of law to be determined by the court. The third and fourth elements are questions for the trier of fact. *Id.* at ¶ 18, citing *Collins* at 70.

{¶ 20} Regarding the existence of a clear public policy, at the trial level and on appeal, appellant asserted the "[p]roper regulation and documentation of spraying activities is important to insure the public health and prevent environmental damage." (Appellant's Brief, 16.) He also relied on two administrative regulations. First, he cited Ohio Adm.Code 901:5-11-2(A)(2), which requires trained servicepersons who apply pesticides for hire do so under the direct supervision of a commercial applicator. Second, he cited Ohio Adm.Code 901:5-11-10, which contains information a commercial applicator must record in certain instances when he or a trained serviceperson working under his direct supervision applies pesticides.

{¶ 21} The Court of Claims found appellant failed to cite any authority to support his contention that these regulations manifested a clear public policy. The Court of Claims found that even if it determined appellant had identified a clear public policy, there was "no question that [ODOT's] investigation of plaintiff's statements on his application was related to [ODOT's] efforts to comply with those regulations." (R. 19, 4.) Additionally, the Court of Claims also found it was clear ODOT's investigation, which resulted in appellant's decision to resign, "did not jeopardize the policy." (R. 19, 4.)

{¶ 22} Under his second assignment of error, appellant complains the Court of Claims erred by determining a public policy had not been jeopardized without actually determining a policy existed or the nature of that policy. Appellant claims it is impossible to determine a policy has not been violated without determining what that policy entails. Appellant's contention lacks merit. Like the Court of Claims, this court is not persuaded the regulations appellant relies on demonstrate the existence of a clear public policy regarding the importance of "[p]roper regulation and documentation of spraying activities." (R. 18, 6.) Appellant cites no legal authority that would support such a finding.

{¶ 23} Moreover, as the Court of Claims indicated, even if we gave appellant the benefit of the doubt that a public policy exists regarding spraying, his dismissal does not jeopardize it. At the trial level, appellant suggested his dismissal jeopardized a public policy on the regulation and documentation of spraying because ODOT supposedly doctored records and fired him to cover up unlicensed spraying activities. ODOT's alleged misconduct does not absolve appellant of responsibility for his own misstatements. Again, appellant is the person who represented he had a license when he did not and then sprayed without a license. Appellant's dismissal does not jeopardize any public policy in favor of regulating spraying activities; in fact, it would be consistent with regulations requiring licensure. Accordingly, we overrule appellant's second assignment of error.

{¶ 24} Although somewhat unclear, under his first assignment of error appellant appears to address the causation and overriding business justification elements of his wrongful discharge claim. This portion of the assigned error is moot. We need not resolve whether those elements were satisfied in this case because appellant failed to establish the clarity and jeopardy elements. Consequently, we find no error in the grant of

summary judgment on the wrongful discharge claim. Therefore, the portion of the first assignment of error regarding wrongful discharge is rendered moot.

## V. CONCLUSION

{¶ 25} Appellant's first assignment of error is rendered moot in part and overruled in part. The second assignment of error is overruled. The judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

SADLER, P.J., and CONNOR, J., concur.